UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## REDACTED

### CIVIL MINUTES – GENERAL

| Case No. | LA CV23-02360 JAK (RAOx) | Date | March 8, 2024 |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson Terrell | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:**    **(IN CHAMBERS) ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 127)**

## I.    Introduction

On September 13, 2021, Suzette A. Kelly ("Kelly") and Sarahi Fashion House ("Sarahi," or together with Kelly, "Plaintiffs") brought this action against Fashion Nova, LLC ("Defendant"). Dkt. 1 (the "Complaint"). On September 13, 2023, Plaintiffs filed their Third Amended Complaint, which is the operative pleading. Dkt. 119 (the "TAC"). The TAC advances five causes of action: (1) infringement of U.S. Patent No. D674,991 (the "'991 Patent"); (2) infringement of U.S. Patent No. D686,800 (the "'800 Patent"); (3) false designation of origin, false description and dilution in violation of 15 U.S.C. § 1125(a); (4) federal trademark infringement in violation of the Lanham Act; and (5) unjust enrichment. *Id.* ¶¶ 23–82.

On September, 28, 2023. Defendant filed a motion for summary judgment. Dkt. 128 (the "Motion"). Plaintiffs filed their opposition on October 13, 2023. Dkt. 137 (the "Opposition"). On October 20, 2023, Defendants filed their reply. Dkt. 145 (the "Reply"). Pursuant to the stipulation of the parties, Defendants filed an abbreviated reply on October 30, 2023. Dkt. 151 (the "Abbv. Reply").

A hearing on the Motion was held on November 13, 2023. Dkt. 149. For the reasons stated in this Order, the Motion is **GRANTED IN PART** with respect to the dilution claim, the unjust enrichment claim, and the trademark and false designation claims to the extent they rely on conduct unrelated to the 15 Accused Trademark Products and **DENIED IN PART** with respect to the remaining claims.

## II.    Factual Background

### A.    Patent Claims

Kelly asserts two patent infringement claims against Fashion Nova based on the '991 Patent and the '800 Patent (collectively, the "Asserted Patents"). Dkt. 143-4 ¶ 1. The Asserted Patents are design patents for "V-Cut and C-Cut Jeans" (collectively, the "Jeans"). *Id.* ¶ 2. The Asserted Patents were both filed on June 19, 2012. *Id.* ¶ 3. The '991 Patent includes the following drawing:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |



Dkt. 119-1 at 2.

The '800 Patent includes the following drawing:



Dkt. 119-2 at 2.

In February 2011, Kelly received a Certificate of Registration from the United States Copyright Office for the "Circle Cut & V Cut Jeans Collection." Dkt. 143-4 ¶ 122. The copyright application includes several drawings for the Circle Cut & V Cut Jeans Collection. *Id.* ¶ 123. The drawings are as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date |
|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | |

 

*Id.* ¶¶ 124–25.

On or before February 13, 2011, Kelly created a website for Sarahi House of Fashion (the "Sarahi Website"). Dkt. 143-4 ¶ 6. The Sarahi Website uses the following address: http://sarahifashion.com. *Id.* ¶ 7.[1] The Sarahi Website includes an "About Sarahi Fashion" webpage. *Id.* ¶ 8.[2] On or before February 13, 2011, the Sarahi Website had a webpage offering for sale jeans from a collection ("Jeans Collection Webpage"), which included "Sarahi V Cut Jeans" and "Sarahi C Cut Jeans." *Id.* ¶ 12.[3] The C Cut and the V Cut jeans were each offered at a sales price of $229. *Id.* ¶¶ 20, 24.[4] A screenshot of the

---

[1] The Parties disagree over the authorship of the Sarahi Website. Defendant contends that Kelly and the Sarahi House of Fashion were the authors of the Sarahi Website, and that the publisher was the Sarahi House of Fashion. Dkt. 143-4 ¶ 7. Kelly cites testimony that she was not in control of the content posted on the website. *Id.*; Dkt. 128-2 at 32–34. However, the testimony cited by Kelly relates to control of a Facebook page, not the Sarahi Website. Dkt. 128-2 at 32–34.

[2] The parties disagree over the authenticity of the "About Sarahi Fashion" page of the website. Defendant contends that information from the "About Sarahi Fashion" webpage of the Sarahi Website was captured by the Internet Archive and includes paragraphs about Kelly. Dkt. 143-4 ¶ 9; Dkt. 128-1 ¶ 4 (citing Dkt. 128-4). Plaintiffs dispute the authenticity of the website because they claim that the record is not supported by any certified documents that authenticate the webpage. Dkt. 143-4 ¶ 9. Defendant contends that it authenticated the exhibit through the Declaration of Jeanne Gills. *Id.*

[3] The V Cut Jeans are described as "High Waist Back, Front Cut in V Shape Helping to Flaunt Your Shape." Dkt. 143-4 ¶ 12. The C Cut jeans are described as "cut low waisted in the front in the shape of a C while giving you a high waist back." *Id.*

[4] The parties disagree over the authenticity of the Jeans Collection webpage. Defendant contends that the Jeans Collection webpage was captured by the Internet Archive. Dkt. 143-4 ¶ 11; Dkt. 128-1 ¶ 4 (citing Dkt. 128-4). Plaintiff disputes the authenticity of the website based on the absence of any certified documents that support that contention as to the webpage at issue. Dkt. 143-4 ¶ 11. Defendant claims that it authenticated the exhibit through the Gills Declaration. *Id.* The Parties also disagree over the authenticity of the C Cut Jeans webpage. Defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
| --- | --- | --- | --- |
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

advertisements for these jeans is as follows:



*Id.* ¶ 12.

Kelly "caused to be created" a Facebook page titled "Sarahi" (the "Sarahi Facebook Page"). *Id.* ¶ 25.
The Sarahi Facebook Page includes an introduction that includes a telephone number, email address,
website URL, and phrases such as "princess," "queen," "mother of all nations" and "Sarahi The New
Fashion Line For All Women." *Id.* ¶ 27. The Sarahi Facebook Page includes a link to the Sarahi
Website. *Id.* ¶ 28. Starting no later than July 6, 2010, the Sarahi Facebook Page has been publicly
accessible. *Id.* ¶ 29. Posts were made on the Sarahi Facebook Page on July 6, 2010, and June 6,
2011. *Id.* ¶¶ 29–30. The June 6, 2011 post is the following photograph of a woman wearing jeans:



*Id.* ¶ 30.

---

contends that information from the Sarahi C Cut Jeans webpage was captured by the internet archive. *Id.* ¶ 22;
Dkt. 128-1 ¶ 5 (citing Dkt. 128-5). Plaintiffs dispute the authenticity of the webpage; they assert that the record
has no support of any certifying documents authenticating the webpage. Dkt. 143-4 ¶ 22. Defendant responds
that it authenticated the exhibit through the Gills Declaration. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

The Sarahi Facebook Page also includes a post from June 6, 2011, for an album titled "Sarahi
Signature Shopping Event." *Id.* ¶ 31. This album includes 38 images that had been posted on
Facebook. *Id.* ¶ 32. It also includes several photographs of women wearing jeans. *Id.* ¶¶ 33–38. Four of
these photographs are dated prior to June 6, 2011, and were taken on Ocean Drive in Miami Beach,
Florida, which is a public location. *Id.* ¶ 39. Kelly testified that she took these photographs, which are as
follows:





UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |






UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |



*Id.* ¶¶ 33–38.

Kelly also "caused to be created" a Facebook page titled Sarahi Kelly (the "Sarahi Kelly Facebook Page"). *Id.* ¶ 40. The Sarahi Kelly Facebook Page includes the following information about Kelly: she is the CEO and Founder of Sarahi; she is a designer; and she lives in Miami, Florida. *Id.* ¶ 42. The Sarahi Kelly Facebook Page also has a link to the Sarahi Website, sarahifashion.com. *Id.* ¶ 43. The Sarahi Kelly Facebook Page has been publicly accessible from on or before July 6, 2010, and was initially a page for the Sarahi House of Fashion, as stated in two posts from July 2010. *Id.* ¶¶ 44, 45.

On May 17, 2011, a post was made on the Sarahi Kelly Facebook Page stating that jeans, including the C Cut, would be offered for sale, and that shipments would begin in four weeks. *Id.* ¶ 47. The screenshot of the post is as follows:



*Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

On the same day, the public profile image for the Sarahi Kelly Facebook page was updated as shown in the following post:



*Id.* ¶ 46.

On June 5, 2011, a post was made on the Sarahi Kelly Facebook Page directing visitors to a website to purchase "Signature Jeans." *Id.* ¶ 48. On June 5, 2011, a post was made on the Sarahi Kelly Facebook Page stating that Sarahi products were available online at http://globalfashionbrands.com. *Id.* ¶ 49. On June 13, 2011, a post was made on the Sarahi Kelly Facebook Page stating that the "jeans are here," *i.e.*, were available for purchase. *Id.* ¶ 50.

On June 13, 2011, a post on the Sarahi Kelly Facebook Page provided a link to an article on the website for Bronze Magazine that featured the "Sarahi House of Fashion Exclusive Signature C Cut Jeans." *Id.* ¶ 51. The Bronze Magazine article was published online on June 13, 2011. *Id.* ¶ 52. The Bronze Magazine article includes two photographs of women wearing jeans. *Id.* ¶¶ 54–56. The article also includes a description of the C and V Cut jeans, and states that Kelly created and patented them. *Id.* The article then states: "Designs can be purchased at Sarahi House of Fashion or Global Fashion Brands." *Id.* ¶ 57. On or before June 10, 2011, Kelly caused the C Cut and V Cut jeans to be offered for sale at Global Fashion Brands. *Id.* ¶ 58. On or before June 10, 2011, the Global Fashion Brands webpage offered Sarahi's "Signature V Cut Jeans" and its "Signature C Cut Jeans." *Id.* ¶¶ 61–64. Each was offered in both "skinny" and "bootcut" styles at the price of $179. *Id.* Fashion Nova's design expert, Trista Grieder, determined that the jeans Plaintiff sold more than one year before she filed her patent application contained the same design elements as the jeans depicted in the Asserted Patents. *Id.* ¶ 66

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

(citing Dkt. 128-15).[5]

The Bronze Magazine article includes the following photograph of Plaintiffs' jeans:



Dkt. 128-13 at 63 (blue rectangle in original).

Plaintiff states that she sent an email to Fashion Nova in 2013, in which she offered to sell Sarahi's patented jeans on Fashion Nova's website. Dkt. 143-4 ¶ 102. Plaintiff stated that she no longer has a copy of the email, although she has produced other emails that she sent or received prior to, and during 2013. *Id.*

Defendant claims that it did not provide any design drawings to its vendors. *Id.* ¶ 111 (citing Dkt. 128-3). Plaintiffs assert that Defendant's purchase orders state that it did so. *Id.* The purchase orders do not expressly state that Defendant provided design drawings to its vendors. *Id.* Some of Defendant's 2018 purchase orders for the accused products use the term "Custom Cut." *Id.* ¶ 129. Defendant denies that it designed the jeans that it advertises, markets and sells under the Fashion Nova label and on its website. *Id.* ¶ 128.

Plaintiffs contend that Defendant ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 132 (citing Dkt. 137-8). However, the evidence cited by Plaintiffs refers to Defendant's gross sales figures. Dkt. 137-8.

---

[5] Plaintiffs do not dispute that Defendant's expert made this statement but dispute its validity. Dkt. 143-4 ¶ 66. This fact is addressed in further detail below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | | Date | |
| --- | --- | --- | --- | --- |
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | | |

B.    Trademark Claims

1.    <u>The Dispute</u>

Sarahi markets and sells Kelly's clothing designs under the federally registered "SARAHI" trademark (the "Mark" or "Plaintiffs' Mark"). Dkt. 137 at 12. Sarahi filed for registration of the "SARAHI" mark in May 2022, and the "SARAHI" mark was registered on March 7, 2023. Dkt. 143-4 ¶ 68 (citing Dkt. 62-5). It is undisputed that on the Sarahi website, it uses the Mark as a source identifier for the V-Cut and C-Cut Jeans and other products. *Id.* ¶ 71 (citing Dkt. 119 ¶ 56). On March 24, 2023, Plaintiff sent Fashion Nova's counsel a cease and desist letter concerning the alleged infringement of the Mark. *Id.* ¶ 135.

The TAC asserts a claim for false designation of origin, false description and dilution against Fashion Nova based on the Mark. *Id.* ¶ 67 (citing Dkt. 119 ¶ 56). The TAC also asserts a trademark infringement claim against Fashion Nova based on the "SARAHI" trademark. *Id.* ¶ 70 (citing Dkt. 119 ¶ 72). Fashion Nova does not own a trademark for "SARAHI" or any colorable variation of that word, and its Rule 30(b)(6) witness testified that Fashion Nova was unaware of any trademark registration for "SARAHI." Dkt. 137 at 12; Dkt. 143-4 ¶ 92. Plaintiffs contend that the Mark appears prominently on Fashion Nova's website with Fashion Nova's logo, as well as photographs of models wearing Fashion Nova's clothing that is offered for sale using the header "**SARAHI**." Dkt. 143-4 ¶ 133 (emphasis in original). Plaintiffs also contend that Fashion Nova uses Plaintiffs' "SARAHI" mark as a search engine optimization ("SEO") keyword, and that it does so to ensure that it appears as the top search result for "SARAHI JEANS" on Google. Dkt. 137 at 12. Defendant disputes this assertion and states that the display of the term "SARAHI" is in response to an individual's search on Fashion Nova's webpage for "SARAHI." Dkt. 143-4 ¶ 133. An example of a display from Fashion Nova's website is as follows:



Dkt. 137-9 at 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

The parties do not dispute that the following 15 Fashion Nova products allegedly infringe the Mark: (1) Sarah Sleeveless Midi Dress – Blue; (2) Sarai Quilted Shacket –Taupe; (3) Sarai Quilted Shacket – Green; (4) Sarah Sleeveless Midi Dress – Black; (5) Sarah Sequin Top – Black; (6) Sarah Sequin Top – Gold;[6] (7) Sarai Platform Wedges – Black; (8) Sarai Mini Dress – Black; (9) Sarai Slinky Skirt Set – Hunter; (10) Sarai Slinky Skirt Set – Mocha; (11) Sarah Sequin Jumpsuit – Dusty; (12) Blue Sarah Button Front Blazer – Blue; (13) Sarah Button Front Blazer – Pink; (14) Sarah High Rise Shorts – Black; and (15) Sarahi Hi-Cut Body Suit (the "Accused Trademark Products"). Dkt. 143-4 ¶ 72.[7] Photographs of examples of the Accused Trademark Products sold by Fashion Nova are as follows:

 

---

[6] Fashion Nova states that there is no product that uses this name, and that it assumes that Plaintiffs meant to identify "Sarah Sequin Top – Green." Dkt. 143-4 ¶ 72 n.2.

[7] Plaintiffs contend that there are 62 products at issue, citing their pleadings. Dkt. 143-4 ¶ 72. No evidence is provided with respect to any products other than the 15 identified above. Plaintiffs also cite a March 24, 2023 letter to Defendant in support of its contention that more than 15 products are at issue, but the letter does not identify any products by name. Dkt. 96-6; Dkt. 143-4 ¶ 72.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

 

*Id.*[8]

Some examples of photographs of the online listings of Fashion Nova's Accused Trademark Products are as follows:



---

[8] Fashion Nova states that because it does not have possession of versions of all of the Accused Trademark Products, it has submitted photographs of the products that are within its possession, custody and control. Dkt. 128-1 ¶ 20; Dkt. 143-4 ¶ 73 n.3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date |
| --- | --- | --- |
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | |



*Id.* ¶ 74.

Plaintiffs' initial disclosures identified three individuals that purportedly have "[i]nformation regarding instances of actual confusion as to the source of the jeans." Dkt. 143-4 ¶ 75. Plaintiffs refer to "an older model" who allegedly asked if Sarahi "was on Fashion Nova." *Id.* ¶ 104. Plaintiff believes that the model's first name is "Zoe," but does not remember the model's last name. *Id.* Fashion Nova served the following Rule 34 request on Plaintiffs: "All documents and things relating to actual confusion between [Kelly or Sarahi] and Fashion Nova, including but not limited to confusion that has arisen by virtue of the acts alleged in the" Complaint. *Id.* ¶ 80.

In response to this request, Plaintiffs state that they "do not have documents responsive to this request." *Id.* Plaintiffs have not produced any consumer confusion surveys. *Id.* ¶ 104. Plaintiffs claim to have contacted Defendants by in email in 2013 about the sale of Sarahi's jeans on Defendant's website, but Kelly does not have a copy of the email. *Id.* ¶ 102. Sarahi has never sold a bodysuit product. *Id.* ¶ 103. A demand letter sent by Plaintiffs prior to the commencement of this litigation does not refer to "Sarahi" or any trademark rights, but only to the patents at issue. *Id.* ¶ 106.

With respect to the "SARAHI" mark, nonparties to this litigation used marks similar to "Sara" and "Sarah" for clothing before Plaintiffs began using the term "SARAHI." The following trademarks for clothing predate Plaintiffs' Mark: (1) "SARA"; (2) "SARAMAX"; (3) "SARAH'S ANGEL"; (4) "SARAH SEVEN"; (5) "SARAH SPENCER"; (6) "SARA LENE"; (7) "SARA ROKA"; (8) "SARA THE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

COLLECTION"; (9) "SARA WEAR"; (10) "SARAH BORGHI"; (11) "SARAH CANDY"; (12) "SARAH DANIELS"; (13) "SARAH DEAN NEWYORK"; (14) "SARAH LOUISE"; and (15) "SARAH MCKENZIE." *Id.* ¶ 78.

No evidence has been presented that Defendant procured or possessed Plaintiffs' designs prior to purchasing or selling the allegedly infringing products. *Id.* ¶ 107. Nor has any evidence been proffered that Defendant used Plaintiffs' designs to create and sell their products. *Id.* ¶ 108. It is not disputed that Defendant does not design or manufacture the allegedly infringing products. *Id.* ¶ 109. Instead, Defendant purchased the allegedly infringing products from its vendors, who represented to Defendants that the products were owned by the vendor and did not infringe any intellectual property rights of another party. *Id.* ¶ 110. Defendant claims that it did not provide any design drawings to its vendors. *Id.* ¶ 111 (citing Dkt. 128-3). Plaintiffs assert that Defendant's purchase orders state otherwise. *Id.* The purchase orders do not show that Defendant provided design drawings to its vendors. Dkt. 137-5. Some of Defendant's 2018 purchase orders for the accused products were custom made. Dkt. 143-4 ¶ 129 (noting that the phrase "Custom Cut" was used). However, no evidence has been proffered that Defendant provided design drawings to any vendors.

    2.    <u>Fashion Nova's Business</u>

Fashion Nova primarily sells its products directly to consumers through its e-commerce website, fashionnova.com, which is "very different" than the marketplace for department stores. *Id.* ¶¶ 86, 98. Retailers like Fashion Nova, which have a "fast fashion" business model, procure product from vendors more frequently than on the seasonal cycles used by many brick and mortar retailers, including traditional department stores. Dkt. 103-1 at 11–12. Fashion Nova markets its products primarily by using influencers on social media. Dkt. 143-4 ¶ 89. Fashion Nova's social media presence includes more than 21 million followers on Instagram, 2.8 million followers on Facebook and over 169,000 followers on Twitter. *Id.* Fashion Nova's Accused Trademark Products were sold for an average price of $21.98. *Id.* ¶ 85.

Plaintiffs contend that for the last six years, Fashion Nova has generated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, from the sale of infringing products using the Plaintiffs' "SARAHI" trademark and colorable variations of it. *Id.* ¶ 140. Defendant responds that this net profits figure is the result of the sale of several different products, most of which have no connection to the mark "SARAHI." *Id.* Defendant contends that it used a variety of baby names to identify its goods. *Id.* ¶ 141.

    3.    <u>Sarahi's Business</u>

The Sarahi Website currently offers five styles of jeans, four hooded sweatshirts, and 30 t-shirts. Dkt. 143-4 ¶ 100.[9] The prices for Plaintiffs' products are significantly higher than those reflected on Fashion Nova's website. *Id.* Plaintiffs' jeans are currently sold on its website at prices ranging from $89.99 to $249.00, "with the average price of $201.75." Dkt. 143-4 ¶ 84. Sarahi has never sold a bodysuit product

---

[9] Plaintiffs generally dispute the number of products offered, but do not provide any specificity. Dkt. 143-4 ¶ 100. Defendant contends that even if there is a dispute as to the number of products offered, it is not material to the matters raised in the Motion. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

and none of the Accused Trademark Products are jeans. *Id.* ¶¶ 76, 103.

The sales data produced by Plaintiffs reflects a total of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 83. Sarahi has marketed its jeans collection as its "Signature Collection" and "a true designer denim line." *Id.* ¶ 101. Plaintiffs' marketing includes the use of magazines, fashion shows, contacting retailers and fashion bloggers, and hosting events with designer brands. *Id.* ¶ 90. The Sarahi Website includes links to Plaintiffs' Instagram, Facebook, and Twitter accounts. *Id.* ¶ 91. As of August 17, 2023, Sarahi's social media presence includes 10 Twitter followers, 1429 Instagram followers, and 12,000 Facebook followers. *Id.* Plaintiffs have not posted anything to their most popular social media account (Facebook) between April 30, 2019, and June 15, 2023, and have not posted to their Instagram account since June 30, 2019. *Id.* Plaintiffs' products have been offered for sale through Sarahi's website, private sales, and at Macy's Department Store. *Id.* ¶ 97. However, Plaintiffs always intended to sell their products primarily in retail stores. *Id.* ¶ 88.

III.    <u>Legal Standards</u>

A motion for summary judgment will be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* at 324. Where the non-moving party will have the burden of proof on an issue, the movant need only demonstrate that there is an absence of evidence to support such claims. *Id.* If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e).

With certain exceptions, only admissible evidence may be considered in connection with a motion for summary judgment. Fed. R. Civ. P. 56(c). However, in considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. *Id.* All inferences are to be "drawn in the light most favorable to the nonmoving party." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). This means that "where the facts specifically averred by [the non-moving] party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

A court is not required to assume that "general averments embrace the 'specific facts' needed to sustain the complaint." *Id.* "The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Id.* Thus, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of material fact and defeat summary judgment. *See LVRC Holdings v. Brekka*, 581 F.3d 1127, 1136 (9th Cir. 2009); *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). "If the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show that there is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998).

## IV.   Application

### A.   Patent Infringement Claims

A patent is presumed valid. *See* 35 U.S.C. § 282(a). The burden of establishing invalidity is on the party asserting this defense. To meet this burden, the moving party must present clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003). "Although an exact definition is elusive, 'clear and convincing evidence' has been described as evidence that 'place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable.' " *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 n.5 (Fed. Cir. 2007) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

Defendant begins by arguing that the on-sale bar invalidates the patents. "Under the on-sale bar, . . . an inventor may not patent an invention that has been 'on sale' more than one year before the patent application is filed." *Link Treasure Ltd. v. Baby Trend, Inc.*, 809 F. Supp. 2d 1191, 1198 (C.D. Cal. Aug. 15, 2011); 35 U.S.C. § 102(b). "[T]he on-sale bar applies when [the following] two conditions are satisfied before the critical date":

> First, the product must be the subject of a commercial offer for sale. . . . Second, the invention must be ready for patenting. That condition may be satisfied in at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.

*Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998).

Defendant also argues that the patents at issue are invalid due to the public-use bar. "[I]n order to invalidate a patent based on prior knowledge or use, that knowledge or use must have been available to the public." *Woodland Tr. v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998). Prior public use will invalidate a patent if it was "accessible to the public" or "commercially exploited." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005); *see Dzinesquare, Inc. v. Armano Luxury Alloys, Inc.*, No. CV14-01918 JVS (JCGx), 2014 WL 12597154, at *6 (C.D. Cal. Dec. 22, 2014) (public-use bar applied because plaintiff's design was both accessible and commercially exploited on Facebook).

Finally, Defendant argues that the patents are invalid due to the printed-publication bar. Dkt. 128 at 14–15. A person is not entitled to a patent if the invention was "described in a printed publication . . . before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1). "[T]he printed publication provision was designed to prevent withdrawal by an inventor, as the subject matter of a patent, of that which was already in the possession of the public." *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981). A public disclosure of a design must be "enabling," *i.e.*, it must "be sufficient to permit a person having ordinary skill in the art to practice the invention."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date |
|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | |

*CNET Networks, Inc. v. Etilize, Inc.*, 584 F. Supp. 2d 1260, 1268 (N.D. Cal. Oct. 22, 2008).

All of these arguments are premised on one or more of the following disclosures, each of which took place prior to the critical date: (1) the jeans offered for sale on the Sarahi Website; (2) the jeans depicted in the June 6, 2011 post on the Sarahi Facebook Page; (3) the jeans depicted on the Sarahi Kelly Facebook Page; (4) the jeans available on the Global Fashion Brand website; and (5) the article in Bronze Magazine depicting Plaintiffs' jeans. *See* Dkt. 128 at 11–20.

Plaintiffs do not dispute that each of these disclosures qualifies as a sale, a public use, and/or a printed publication. Nor do Plaintiffs dispute that these disclosures took place prior to the critical date. Further, the disclosed images are of jeans that had been manufactured, so to the extent those jeans are substantially the same as those depicted in the patent drawings, it cannot genuinely be disputed that the relevant invention was reduced to practice. Thus, each of these disclosures would invalidate Plaintiffs' design patents so long as they anticipate the patents.

Plaintiffs respond that these disclosures were with respect to their copyrighted jeans rather than their patented jeans. Dkt. 137 at 17. As a preliminary matter, Plaintiffs' contention that the jeans would not anticipate the patent if they were copyrighted is incorrect. *First*, although a useful article can be patented, a useful article cannot be copyrighted. Only in certain circumstances can "a feature incorporated into the design of a useful article" be eligible for copyright protection. *See Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 409 (2017). *Second*, patent and copyright protection can be overlapping in that the sale of a single product might infringe both Plaintiffs' design patents and their copyrights.

Instead, to show anticipation under 35 U.S.C. § 102, "[a]s with a utility patent, design patent anticipation requires a showing that a single prior art reference is identical in all material respects to the claimed invention." *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001) (internal quotation marks omitted). In comparing design patent prior art with the claimed design to determine if the prior art invalidates a patent, the Federal Circuit has explained that "the ordinary observer test must logically be the sole test for [design patent] anticipation." *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009). That test is whether, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same;" designs are substantially the same when "the resemblance is such as to deceive [the ordinary] observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008).

Under this standard, Defendant has not shown that there is no triable issue of fact. Defendant first argues that the design patents were drafted based on the sketches in Plaintiffs' copyrighted documents. Dkt. 145 at 7; Dkt. 128-2 at 5. Even assuming that this assertion is one as to which there is no triable issue, this is not itself sufficient to establish that there are no material differences between the patented designs and the designs depicted in the disclosed images.

With respect to the jeans offered for sale on the Sarahi Website or the Global Fashion Brands website, no images of these jeans are available. *See* Dkt. 137-6 ¶¶ 36–37, 41–42. Plaintiffs have not proffered any evidence that the design Plaintiffs used at the time of the disclosure was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

materially different from the design that was submitted to the USPTO about a year later. However, the burden of proof on invalidity is on the Defendant, and Defendant has not shown that these designs are identical to the patented ones. The parties have discussed several videos that cannot be located and that were recorded shortly after the disclosures at issue. Because it has been determined that Plaintiffs engaged in spoliation of this evidence, the jury will be instructed that it may presume the lost videos were unfavorable to Plaintiffs, including that the videos showed the patented designs. Dkt. 159 at 2. Thus, if the jury infers that the lost videos showed the patented designs, it could then infer that the designs Plaintiffs were selling at the time of the videos, and the time of the website sales, were the patented designs. However, because this inference is permissive, not mandatory, it does not meet the standard for summary judgment, which requires that Defendant show that there is no triable issue of fact.

Further, although Kelly initially testified at her deposition that the disclosed images were identical to her patented design, she changed these answers within the time she was permitted to do so. Defendants will be permitted to cross-examine Kelly about her decision to modify her testimony, but Kelly's present testimony that the designs are not the same cannot be disregarded as the equivalent of a sham affidavit. *See* Dkt. 153 at 17–19. Instead, this again presents a triable issue of fact.

The remaining disclosures are the jeans depicted on the two Facebook pages and in the Bronze Magazine article. The same evidence applies to all of them. Plaintiffs' expert has opined that these designs "look dissimilar to the patented designs and depict a different ornamentality." Dkt. 137-6 ¶¶ 38–39. This statement is not sufficient to conclude that there is no triable issue of fact; a jury would consider all of the evidence in making its determination and would not be required to accept the opinion of a retained expert. Plaintiffs' expert also opines that the disclosed jeans are different from the patented designs because the "[m]odel suits [the magazine's] editorial needs" and does not have "the target body type" for the patented jeans. *Id.* ¶ 40. This is insufficient because these differences relate to the model depicted in the magazine article, not to the jeans themselves. Further, for the same reasons stated earlier, the jury is not required to infer that the design depicted in the lost videos was the patented design.

Plaintiffs' expert also opines that "visually the jeans are different from the patented designs, which would have a much higher waist to hip ratio." *Id.* Kelly also stated that these jeans did not anticipate the design patents because they were "more circular." Dkt. 137-12 at 12. Although the evidence is very limited, a review of the available images does not compel the conclusion that there is no triable issue as to whether the designs are substantially the same:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date |
|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | |





UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |



*Compare* Dkt. 119-1 at 2 *and* Dkt. 119-2 at 2 *with* Dkt. 143-4 ¶¶ 30–38, 54–55 *and* Dkt. 128-13
at 64.

The line drawings above, which are in the design patents, reflect a significant amount of
material above the hips that is present in the back but not in the front. The jeans shown also
appear to narrow from the hips toward the waist. It is not clear whether the other four images,
which were disclosed by Plaintiffs prior to the critical date, have as much material in this
location. It appears that in the disclosed images, the legs of the jeans widen slightly at the
bottom. However, in the line drawings, the legs of the jeans narrow slightly at the bottom. A
"district court on summary judgment [may] determin[e] that individual features of the design are
insignificant from the point of view of the ordinary observer and should not be considered as
part of the overall comparison." *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233,
1243 (Fed. Cir. 2009). However, a review of these images does not show the absence of a
triable issue of fact as to whether there is clear and convincing evidence that the differences
identified here are necessarily "minor or trivial differences that necessarily exist between any
two designs that are not exact copies of one another." *Id.* This determination is also appropriate
based on how the evidence can be viewed at this time. Thus, the four disclosed images are
taken from different angles than those reflected in the design patents and certain of the images
are blurred or have shadows and similar effects.

Accordingly, summary judgment is not warranted on either patent infringement claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
| --- | --- | --- | --- |
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

B.    Lanham Act Trademark Claims

The Lanham Act prohibits the "use in commerce of any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services" when "such a use is likely to cause confusion, or to cause mistake" 15 U.S.C. § 1114. To prevail on a trademark infringement claim, a plaintiff must prove that (1) it has a protectable ownership interest in the mark and (2) the defendant's use of the mark is likely to cause customer confusion as to the affiliation, origin, sponsorship, or approval of service. *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2d Cir. 2009); *see also Microsoft Corp. v. Buy More, Inc.*, 136 F. Supp. 3d 1148 (C.D. Cal. 2015), *aff'd*, 703 F. App'x 476 (9th Cir. 2017).

The Ninth Circuit applies the eight-factor *Sleekcraft* test to determine whether there is a likelihood of confusion. *AMF v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). The factors are:

    (1) the strength of plaintiff's mark;
    (2) the relatedness or proximity of the goods;
    (3) the similarity of the marks;
    (4) evidence of actual confusion;
    (5) the degree to which the parties' marketing channels converge;
    (6) the type of goods and degree of care purchasers are likely to exercise in selecting the goods;
    (7) evidence of defendant's intent; and
    (8) the likelihood that parties will expand their product lines.

*Id.*

The *Sleekcraft* factors are intended as an adaptable means of determining whether there is consumer confusion and are not to be applied as a rote checklist. *See, e.g., Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) ("This eight-factor analysis is 'pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts."); *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) ("The factors should not be rigidly weighed; we do not count beans."); *Eclipse Assoc. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1118 (9th Cir. 1990) ("These tests were not meant to be requirements or hoops that a district court need jump through to make the determination.").[10]

The parties do not dispute that Sarahi has a protectable ownership interest in the Mark, as the Mark is federally registered. Therefore, the remaining issues are whether Defendant used the Mark and whether any such use presented a "likelihood of confusion" under the *Sleekcraft* factors.

    1.    Whether Defendant Used the Mark

---

[10]  The Ninth Circuit has encouraged courts to define the relevant consumer market before conducting a *Sleekcraft* analysis. *See, e.g., Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021). Although neither party has requested a ruling on this issue, the relevant market appears to encompass purchasers of women's clothing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

To determine whether a term is being used as a mark, the question is whether it is being used to "associate it with a manufacturer." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1040 (9th Cir. 2010). "Indications of trademark use include whether the term is used as a symbol to attract public attention, which can be demonstrated by the lettering, type style, size and visual prominence of the challenged words and whether the allegedly infringing user undertook precautionary measures such as labeling or other devices designed to minimize the risk that the term will be understood in its trademark sense." *Id.* (cleaned up). When the defendant has used a mark as an SEO keyword, courts have examined the *Sleekcraft* factors to determine whether that use is likely to cause initial-interest confusion. *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1024–25 (9th Cir. 2004).

Plaintiffs contend that the Mark is "emblazoned as a banner in large all capital letters (with the largest font) at the top of Fashion Nova's webpage, suggesting that "SARAHI" was strategically placed to attract public attention." Dkt. 137 at 23–24. Plaintiffs further contend that below the SARAHI banner are individual photographs of models with corresponding uses of the Mark and/or colorable variations of it directly below the photographs. *Id.* at 24. Plaintiffs also argue that Fashion Nova uses the Mark as an SEO keyword, to prioritize itself as the top search result for "SARAHI JEANS" on Google in order to capture the attention of prospective buyers who use such searches. Dkt. 137 at 12. Plaintiff claims that a single click brings prospective buyers to www.fashionnova.com, where Plaintiffs' "SARAHI" mark is displayed without Plaintiffs' authorization, and is used as a headline in bold letters with accented font as a banner under the "FASHIONNOVA" house trademark. *Id.* at 12. A screenshot of the alleged use is as follows:



Dkt. 137-9 at 4.

Defendants contend that this does not constitute a "trademark use." The basis for this position is that the Mark is only displayed because a user searched for the term "SARAHI" on the website, which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

shows that the Defendants did not place the Mark there. Dkt. 151-1 at 12.

There is a triable issue of fact as to whether Defendant used the Mark. There is no evidence that the Mark was strategically placed to attract public attention; however, "the use of a trademark as a search engine keyword that triggers the display of a competitor's advertisement is a 'use in commerce' under the Lanham Act." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011). Further, a reasonable jury could find that Defendant used the Mark prominently on its website. For example, the following image is from Defendant's website:



Dkt. 143-4 ¶ 74.

In this image, Sarai, which is the word that Plaintiffs contend is confusingly similar to their Mark, is at the very beginning of the name. "Sarai" is also the only non-descriptive word in the name of the relevant product. It is at least as prominent as any of the other identifiers assigned to this product. This analysis also applies to the other Accused Trademark Products. Further, as shown in previous images, the Accused Trademark Products can be located using the names that Plaintiffs contend infringe their Mark. In light of all of this evidence there is a triable issue of fact as to whether Defendant used the words at issue as a trademark. However, although Plaintiffs have presented evidence that Defendant used the Mark on the 15 Accused Trademark Products, Plaintiffs have not proffered evidence that Defendant used the Mark on the other products mentioned in the TAC. Statements in the pleadings do not raise a triable issue of fact with respect to those matters. Because the Plaintiff has not presented evidence as to these other products, the claims as to them fail. Accordingly, the sole question is whether the evidence as to the use of the Mark on the 15 Accused Trademark Products creates a triable issue as to the likelihood of confusion under the *Sleekcraft* factors.

    2.    <u>Sleekcraft Factors</u>

        a)    The Strength of the Plaintiffs' Mark

"The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." *Brookfield*, 174 F.3d at 1058. Two relevant measurements are conceptual strength and commercial strength. Conceptual strength involves classification of a mark "along a spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." *Id.* "A mark's conceptual strength depends largely on the obviousness of its connection to the good or service

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

to which it refers." *Fortune Dynamic*, 618 F.3d at 1032–33. Federal trademark "[r]egistration alone may be sufficient in an appropriate case to satisfy a determination of distinctiveness." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009). However, "while the registration adds something on the scales, we must come to grips with an assessment of the mark itself." *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010). Commercial strength is based on "actual marketplace recognition," and thus "advertising expenditures can transform a suggestive mark into a strong mark." *Brookfield*, 174 F.3d at 1058. "The strength of the mark is a key factor with two components: the mark's recognition in the market (*i.e.*, its commercial strength) and the mark's inherent distinctiveness (*i.e.*, its conceptual strength)." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017), *abrogated on other grounds by Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492 (2020). The conceptual strength of the mark is based on its distinctiveness when placed in a continuum of marks. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 (9th Cir. 2002).

Defendant contends that Plaintiffs' Mark is not strong. In support of this position, Defendant relies on evidence of extensive nonparty use of similar marks such as "Sarah" and "Sara" that predates Plaintiffs' use of their Mark. Dkt. 128 at 21–22; Dkt. 151-1 at 12. Defendant also contends that Plaintiffs have not presented evidence demonstrating that their Mark is commercially strong. Dkt. 128 at 21–22.

Plaintiffs contend that their mark is arbitrary and strong. Plaintiffs argue that "'SARAHI' has no nexus to the clothing items for which it serves as a source identifier and thus it is a strong arbitrary mark." Dkt. 137 at 27. Plaintiffs also contend that Defendant's argument based on numerous similar third-party marks is unpersuasive. *Id.* Plaintiffs' expert has opined that the third-party marks are "visually" and "aurally" distinct from the Sarahi mark. *Id.* Plaintiffs fail to address Defendant's arguments on commercial strength.

(1)    Conceptual Strength

"To determine a mark's conceptual strength, [the Ninth Circuit] classif[ies] a mark along a spectrum of five categories ranging from strongest to weakest: arbitrary, fanciful, suggestive, descriptive, and generic." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1107 (9th Cir. 2016). "[T]he strength of a mark depends, at least in part, on where it falls on a spectrum ranging from the 'arbitrary' to the 'generic.'" *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1211 (9th Cir. 2012). Generic marks, such as "Multistate Bar Examination," describe products in their entirety and are not entitled to protection. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 632 (9th Cir. 2005). Descriptive marks, such as "Honey Roasted," merely "define a particular characteristic of the product in a way that does not require any exercise of the imagination." *Id.* These marks also do not acquire trademark protection without "secondary meaning." *Id.* Suggestive marks suggest a product's features; the use of "some imagination is required to associate a suggestive mark with the product." *Id.* Arbitrary marks are common words without connection to the actual product, such as "Dutch Boy" paint. *Id.* at 631–32. Finally, fanciful marks "consist of coined phrases" without a "commonly known connection with the product at hand." *Id.* at 632. Examples of fanciful marks include "Kodak" cameras or "Aveda" skin care products. *Id.*

Plaintiffs' Mark is arbitrary. The Mark does not define a particular characteristic of a product. The Mark does not describe a product in its entirety. The Mark does not suggest its product's features. Because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

Sarahi is a baby name, the Mark is not a fanciful coined phrase.[11] Because the Mark is a more-or-less common word without connection to the actual product, the Mark is arbitrary, entitling it to a high level of protection. A reasonable jury would have to conclude that the Sarahi Mark is conceptually strong. Indeed, Defendant does not dispute that the Mark is arbitrary. Dkt. 145 at 21–22.

(2)   Commercial Strength

"After identifying whether a mark is generic, descriptive, suggestive, arbitrary, or fanciful, the court determines the mark's commercial strength." *JL Beverage Co.*, 838 F.3d at 1107. The commercial strength of a mark depends on its "marketplace recognition value." *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 508 (9th Cir. 2011). Commercial strength is based on "actual marketplace recognition," and thus "advertising expenditures can transform a suggestive mark into a strong mark." *Brookfield*, 174 F.3d at 1058.

Defendant contends that the mark lacks commercial strength for two reasons. *First*, Defendant argues that Plaintiffs' Mark is weak in light of third-party use of similar marks on similar goods. "A mark which is hemmed in on all sides by similar marks on similar goods or services cannot be very distinctive. It is merely one of a crowd of marks. In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other." *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988). "Even an arbitrary mark may be classified as weak where there has been extensive third party use of similar marks on similar goods." *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1091 (C.D. Cal. June 30, 2003) (internal quotes and citation omitted). As discussed previously, there is extensive third-party use of "Sara" and "Sarah" that predates Plaintiffs' use. For example, the following trademarks predate Plaintiffs' Sarahi mark and were associated with articles of clothing: (1) "SARA SARA"; (2) "SARAMAX"; (3) "SARAH'S ANGEL"; (4) "SARAH SEVEN"; (5) "SARAH SPENCER"; (6) "SARA LENE"; (7) "SARA ROKA"; (8) "SARA SARA THE COLLECTION"; (9) "SARA WEAR"; (10) "SARAH BORGHI"; (11) "SARAH CANDY"; (12) "SARAH DANIELS"; (13) "SARAH DEAN NEWYORK"; (14) "SARAH LOUISE"; and (15) "SARAH MCKENZIE." Dkt. 143-4 ¶ 78. However, although these Marks are quite similar to the one at issue, Defendant has not presented sufficient evidence that these Marks were used on types of clothing similar to those at issue.

*Second*, there is no evidence that establishes the commercial strength of Plaintiffs' mark through surveys, sales data or substantial advertising expenditures. Plaintiffs offer evidence ████ ██████████████████████. Dkt. 143-4 ¶ 83. Further, Sarahi's social media presence includes 10 Twitter followers, 1429 Instagram followers, and 12,000 Facebook followers. *Id.* at ¶ 91. Plaintiffs have not posted anything to their most popular social media account (Facebook) between April 30, 2019, and June 15, 2023, and have not posted to their Instagram account since June 30, 2019. *Id.* Plaintiffs' marketing includes magazines, fashion shows, contacting retailers and fashion bloggers, and hosting events with designer brands. *Id.* ¶ 90. However, no corresponding evidence has been presented as to the quantity or intensity of these advertising efforts. Accordingly, a reasonable jury would not have a basis to determine that these advertising efforts generated substantial marketplace recognition.

---

[11] Even if it were determined that "Sarahi" was fanciful rather than arbitrary, the analysis would be no different because fanciful and arbitrary marks have the same conceptual strength.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

In connection with the Motion, every reasonable inference must be drawn in favor of the non-moving party. The Mark is conceptually strong. Although no evidence has been proffered as to the Mark's commercial strength, this factor still presents a triable issue because Defendant's evidence of third-party use is not sufficiently persuasive to compel the conclusion that the Mark is weak overall.

b)    The Relatedness or Proximity of the Goods

"Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield*, 174 F.3d at 1055. "[T]he danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." *Sleekcraft*, 599 F.2d at 350. The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function. *Id.*

Plaintiffs contend that the Marks are used on related goods. Dkt. 137 at 25–26. They argue that the use of the Marks on clothing makes the products similar, because the products are not "as different as guns and toys." Dkt. 137 at 26 (quoting *Brookfield*, 174 F.3d at 1056). Plaintiffs utilize the SARAHI mark as source identifier for their V Cut and C Cut Jeans, as well as other clothing products. Dkt. 135-2 ¶ 71; Dkt. 119 ¶ 56. Plaintiffs further contend that both parties market and sell "body suits" under the identical "SARAHI" mark as well as other clothing items, and the products target the same consumer market of clothing buyers. Dkt. 137 at 20. Defendant argues that the accused products are not related to Plaintiffs' jeans because they are: (1) 20 different garment types; (2) sold at vastly different price points; and (3) sold in different ways. Dkt. 128 at 23. Defendant further asserts that Plaintiffs have never sold a bodysuit product and none of the accused products are jeans. *Id.*

"[C]ourts have held that the mere fact that two products or services fall within the same general field . . . does not mean that the two products or services are sufficiently similar to create a likelihood of confusion." *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki*, 290 F. Supp. 2d 1083, 1092 (C.D. Cal. 2003) (quotation omitted); *see also Mach. Head v. Dewey Global Holdings*, Inc., 61 U.S.P.Q.2d 1313, 1318 (N.D. Cal. 2001) ("The fact that both products could broadly be described as relating to music is not sufficient to find that the products have a similar use or function."). "Meaningful differences between the products and services are often cited as a factor tending to negate . . . confusion, even when the products are superficially within the same category." *Matrix Motor*, 290 F. Supp. 2d at 1092 (quoting *Harlem Wizards Ent. Basketball*, 952 F. Supp. 1084, 1095 (D.N.J. 1997).

The products offered by both parties are women's apparel. One of the Accused Trademark Products is a bodysuit, and Plaintiffs have offered a bodysuit for sale, although they have not actually made a sale. Dkt. 128-2 at 42–43. However, the accused product is a high-cut bodysuit, which Plaintiffs concede they have not offered for sale. *Id.*

The products in question are different types of women's clothing, including jeans, shirts, dresses, bodysuits, jumpers, tops, shoes, blazers, jackets and shorts. Dkt. 135-2 ¶ 72. The products are marketed and sold at very different price points. Dkt. 143-4 ¶¶ 14–15, 84–85. Although Defendant primarily sells its products directly to consumers on its e-commerce website, Plaintiffs have generally sold their products through retail stores. *Compare* Dkt. 143-4 ¶ 99 *with* Dkt. 128-2 at 43.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

Finally, Plaintiffs assert that "[a] reasonable juror could find in favor of Plaintiff on this factor, especially where Fashion Nova uses SEO coding to hijack prospective buyers of Plaintiffs' SARAHI *jeans* by intentionally misleading prospective buyers that SARAHI *jeans* are sold on their website." Dkt. 137 at 26 (emphasis added). This argument is unpersuasive. None of the Accused Trademark Products are jeans, which undermines Plaintiffs' position that consumers could conclude that the Accused Trademark Products were part of Plaintiffs' "true designer denim line." Dkt. 143-4 ¶ 101. Furthermore, Plaintiffs have not provided any evidence to support their contention that Defendant's SEO covers Sarahi jeans rather than Sarahi.

"The standard for deciding whether the parties' goods or services are 'related' is whether customers are likely to associate the two product lines." *Surfvivor*, 406 F.3d at 633 (internal quotation omitted). Also relevant is "whether the buying public could reasonably conclude that the products came from the same source." *Id.*

Considering the present evidence as a whole, a reasonable jury could find that the buying public would conclude that the products came from the same source. This determination takes into account that all products in this dispute are clothing products. *See Matrix Motor Co., Inc. v. Toyota Motor Corp.*, 290 F. Supp. 2d 1083, 1092 (C.D. Cal. 2003). It also takes into account that Plaintiffs have offered a bodysuit and that the Accused Trademark Products include a bodysuit. "[T]he mere fact that two products or services fall within the same general field does not mean that the two products or services are sufficiently similar to create a likelihood of confusion." *Id.* (internal quotation and alteration omitted). However, a reasonable jury could determine that the parties' products are more closely related than those that merely fall within the same general field.

For the foregoing reasons, this factor weighs in favor of denying the Motion.

c)      The Similarity of the Marks

"[T]he more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." *Brookfield*, 174 F.3d at 1054. "Where the two marks are entirely dissimilar, there is no likelihood of confusion." *Id.* "Similarity of the marks is tested on three levels: sight, sound, and meaning. Each must be considered as they are encountered in the marketplace." *Sleekcraft*, 599 F.2d at 351 (citations omitted). "The relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated." *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998) (cleaned up).

Plaintiffs contend that Fashion Nova uses Plaintiffs' "SARAHI" mark in its advertisement for "SARAHI High-Cut Body Suits" and "SARAHI 3-Piece Pant Set," and near identical marks for other clothing items it offers for sale: "SARAH," "SARAIAH," "SARAI," and "SARABI." Dkt. 137 at 25. Plaintiffs further argue that the high degree of visual similarity between "SARAHI" and the near identical marks used by Defendant outweighs the minor differences in the words, especially because they sound substantially similar when spoken. *Id.*

Defendant contends that only one product name refers to the term "Sarahi," while the other product names reflect other name variations of the common name "Sara," including, "Sarah," "Sarai," and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | | Date | |
|----------|---------------------------|---|------|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | | |

"Saraiah." Dkt. 128 at 22. Defendant also argues that the accused products are not labeled or marketed using the accused product names, nor grouped on Fashion Nova's website in a way that highlights the accused product name. *Id.* They also contend that none of the Accused Trademark Products looks like any of the products with Plaintiffs' Mark. *Id.*

Based on a review of all of the proffered evidence, there is a triable issue of fact with respect to this factor. There are strong visual and aural similarities between Plaintiffs' Marks and Defendant's products. Both Plaintiffs' and Defendant's Marks begin with "Sara," with minor variations in the endings.

         d)     Evidence of Actual Confusion

"[A] showing of actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion." *Playboy*, 354 F.3d at 1026 (citing *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002)) ("Evidence of actual confusion constitutes persuasive proof that future confusion is likely . . . . If enough people have been actually confused, then a likelihood that people are confused is established."). However, "actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act." *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991) (citing *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 832 (9th Cir. 1991)). Indeed, "[p]roving actual confusion is difficult . . . and the courts have often discounted such evidence because it was unclear or insubstantial." *Sleekcraft*, 599 F.2d at 352.

Plaintiffs' initial disclosures identified three individuals that purportedly have "[i]nformation regarding instances of actual confusion as to the source of the jeans." Dkt. 135-2 ¶ 75. Plaintiffs refer to "an older model" that asked if Sarahi "was on Fashion Nova." Dkt. 143-4 ¶ 104. As noted, Kelly thinks the model's first name is "Zoe," but she does not remember her last name. *Id.* Kelly also contends testified that she was asked if she was selling Fashion Nova's products as her own when she began selling to Macys, Inc. Dkt. 137 at 28. No testimony was provided regarding the other two individuals who were allegedly confused with respect to the Accused Trademark Products. *Cf.* Dkt. 128-25 at 3–4. As also noted, Fashion Nova served a Rule 34 request for production of documents, which called for Plaintiffs to provide "[a]ll documents and things relating to actual confusion between [Kelly or Sarahi] and Fashion Nova, including but not limited to confusion that has arisen by virtue of the acts alleged in the" Complaint. Plaintiffs stated that they "do not have documents responsive to this request." Dkt. 135-2 ¶ 80. And, as previously stated, Plaintiffs did not identify any consumer confusion survey evidence. *Id.* ¶ 104.

Even assuming that that there have been three instances of confusion, this evidence is not sufficient as to this factor. *See Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041 (C.D. Cal. 1998) ("[A] plaintiff's failure to conduct a consumer survey . . . may lead to an inference that the results of such a survey would have been unfavorable"); *James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, No. SACV 11-1309-DOC (ANx), 2013 WL 655314, *9 (C.D. Cal. Feb. 21, 2013). This is because a "mark must be likely to confuse an appreciable number of people as to the source of the product[.]" *Entrepreneur Media, Inc.*, 279 F.3d at 1151. The "relevant confusion to be avoided is that which affects purchasing decisions, not confusion generally . . . ." *Network Automation, Inc. v. Hewlett-Packard Co.*, No. CV 08-4675-JFW (RZx), 2009 WL 5908719, at * 10 n.7 (C.D. Cal. 2009) (quoting *Sunenblick v. Harrell*, 895 F. Supp. 616, 631 (S.D.N.Y. 1995)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV23-02360 JAK (RAOx) | | Date | |
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | | |

Therefore, the lack of evidence supporting actual confusion weighs in favor of granting the Motion.

e)      Convergence of Marketing Channels

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. In *Sleekcraft*, the two products were sold in niche marketplaces, including boat shows, specialty retail outlets, and trade magazines. *Id.* at 353. However, this factor becomes less important when the marketing channel is less obscure. "Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *See Playboy*, 354 F.3d at 1028 ("Given the broad use of the Internet today, the same could be said for countless companies. Thus, this factor merits little weight.").

It is undisputed that both parties use the internet and social media as marketing and advertising facilities. However, the parties use methods of marketing that are different in some respects. Plaintiffs' marketing includes magazines, fashion shows, contacting retailers and fashion bloggers, and hosting events with designer brands. Dkt. 143-4 ¶ 90. Plaintiffs' products have been offered for sale through multiple channels beyond Sarahi's website and social media, including sales directly to individuals and at Macy's. *Id.* ¶ 97.

Defendant primarily sells its products online directly to consumers through its e-commerce website, fashionnova.com. Dkt. 135-2 ¶¶ 86, 98. Most of Fashion Nova's sales are made on that website. *Id.* ¶ 99. Fashion Nova markets its products primarily through the use of influencers on social media. *Id.* ¶ 89. Fashion Nova posts frequently on social media and has generated a large social media following including more than 21 million followers on Instagram, 2.8 million followers on Facebook, and more than 169,000 followers on Twitter. Dkt. 128 at 25.

Although Sarahi occasionally uses Instagram, Facebook, and Twitter, as of August 17, 2023, Sarahi has only 10 Twitter followers, 1429 Instagram followers, and 12,000 Facebook followers. *Id.* Plaintiffs have also not posted to their most popular social media account (Facebook) between April 30, 2019, and June 15, 2023, and have not posted to their Instagram account since June 30, 2019. *Id.*

There are several significant differences in the channels used by the parties to market their goods. However, there are also key similarities. Both rely on Instagram, Facebook, and Twitter. A reasonable jury could find that this factor weighs in favor of a likelihood of confusion.

f)      The Type of Goods and Degree of Care Purchasers are Likely to Exercise in Selecting the Goods

"Low consumer care . . . increases the likelihood of confusion." *Playboy*, 354 F.3d at 1028. "In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution . . . ." *Sleekcraft*, 599 F.2d at 353 (citations omitted). "When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely." *Id.* "Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

"The relatively high price of the parties' apparel strongly suggests that consumers of the parties' products are exercising a higher degree of care." *Aliign Activation Wear, LLC v. lululemon athletica Canada Inc.*, No. 20-cv-03339-SVW-JEM, 2021 WL 3117239, at *9 (C.D. Cal. June 7, 2021), *aff'd*, No. 21-55775, 2022 WL 3210698 (9th Cir. Aug. 9, 2022). In *Aliign*, the goods at issue retailed for $98 and $78. *Id.*

Sarahi's jean products are currently listed on its website at prices between $89.99 and $249.00, "with the average price of $201.75." Dkt. 143-4 ¶ 84. Sarahi refers to itself as a fashion house, and Plaintiffs consider their products to be part of "a true designer denim line." *Id.* ¶ 101. Defendant considers itself to be a fast fashion company, which offers its goods at affordable prices. *Id.* ¶ 87. Because Plaintiffs' customers are purchasing goods at a price point equal to or higher than those at issue in *Aliign*, this factor weighs in favor of granting the Motion.

g)    Evidence of Defendant's Intent

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Network Automation*, 638 F.3d at 1153 (9th Cir. 2011) (quoting *Sleekcraft*, 599 F.2d at 354). Nevertheless, the Ninth Circuit has "recognized that liability for infringement may not be imposed for using a registered trademark in connection with truthful comparative advertising." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1248 (9th Cir. 1984). A defendant's intent to confuse constitutes probative evidence of likely confusion. *Playboy*, 354 F.3d at 1028. Courts assume that the defendant's intentions were carried out successfully. *Id.* A party does not need to prove intent to prevail on a claim of trademark infringement. *See Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1274 (S.D. Cal. June 12, 2018). In fact, the Ninth Circuit has "emphasiz[ed] the minimal importance of the intent factor." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th Cir. 2000) (citing *Brookfield*, 174 F.3d at 1059). "Therefore, much like the proximity of the goods, the defendant's intent may be relevant here, but only insofar as it bolsters a finding that the use of the trademark serves to mislead consumers rather than truthfully inform them of their choice of products." *Network Automation*, 638 F.3d at 1153.

Defendant contends that Plaintiffs "fail to identify a scintilla of evidence" in support of the allegation that Defendant adopted the Sarahi mark with intent to capitalize on Plaintiffs' good will. Dkt. 128 at 26. In further support of its position, Defendant argues that it was unaware of any trademark registration for "SARAHI." *Id.* This position is further supported by the evidence that the SARAHI Mark was only registered within the last year. Dkt. 135-2 ¶ 68. Defendant contends that its naming conventions are "based on a random assignment of product names using names from baby naming books." Dkt. 128 at 26. Finally, Defendant contends that the weakness of Plaintiffs' mark shows that there is little, if any, associated goodwill. *Id.* (citing *Aliign*, 2021 WL 3117239, at *9).

Plaintiffs contend that Defendant could have used many alternate baby names to identify its goods, but "in bad faith chose to capitalize on Plaintiff[s'] goodwill." Dkt. 137 at 30. Plaintiffs then argue that because Defendant has continued to use the Mark despite being provided with the Second Amended Complaint, Plaintiffs' Certificate of Registration, and their demand letter demonstrate intent. *Id.* Plaintiffs further contend that Defendant acted with intent to confuse the public, because a search for "SARAHI JEANS" on google directs consumers to www.fashionnova.com, where "SARAHI" is emblazoned as a "bold banner for [Defendant's] advertised clothing items. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|----------|--------------------------|------|--|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

There is very limited evidence that Defendant acted with intent to infringe the SARAHI Mark. There is no evidence that Defendant procured or possessed Plaintiffs' designs prior to purchasing or selling the allegedly infringing products. Dkt. 143-4 ¶ 107. There is also no evidence that Defendant used Plaintiffs' designs to create and sell their products. *Id.* ¶ 108. Defendant does not design or manufacture the allegedly infringing products. *Id.* ¶ 109. Defendant purchased the allegedly infringing products from its vendors, who represented to them that the products were either owned by the vendor or did not feature any infringement of the intellectual property rights of others. *Id.* ¶ 110. Defendant claims that it did not provide any design drawings to its vendors. *Id.* ¶ 111 (citing Dkt. 128-3). Plaintiffs assert that Defendant's purchase orders state otherwise. *Id.* The purchase orders do not state that Defendant provided design drawings to its vendors. Dkt. 137-5. Moreover, Plaintiffs' assertion that Defendant acted with intent because it had other names at its disposal is unpersuasive. Defendant presented unrebutted evidence that it drew its product names from a book of baby names without knowledge of whether other companies were using those names. Dkt. 143-4 ¶ 141.

Accordingly, a reasonable jury could not find that Defendant acted with intent to confuse the public. Therefore, this factor weighs in favor of granting the Motion.

> h)    Likelihood of Expansion

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing. When goods are closely related, any expansion is likely to result in direct competition." *Sleekcraft*, 599 F.2d at 354 (citations omitted). Where two companies are direct competitors, this factor is unimportant. *Cf. Brookfield*, 174 F.3d at 1060. The Ninth Circuit also recognizes that "[r]everse confusion can foreclose the senior user from expanding into related fields and could place the senior company's goodwill in the hands of the junior user. . . . The result of reverse confusion 'is that the senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.' " *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021); *see Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 964 (6th Cir. 1987); *see also Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 445 (3d Cir. 2000) ("[T]he doctrine of reverse confusion is designed to prevent the calamitous situation [where] a larger, more powerful company usurp[s] the business identity of a smaller senior user.").

Defendant contends that there is no evidence that Plaintiffs planned to expand into the fast fashion e-commerce market to compete with Fashion Nova. Dkt. 128 at 27. Defendant offers hundreds of products at lower price points primarily through its e-commerce website, while Plaintiffs only offer five jean styles, four hooded sweatshirts, and 30 t-shirts, at prices substantially higher than those for products on Fashion Nova's website. *Id.* Furthermore, Plaintiffs "vision of Sarahi has always been and was to sell to stores and have stores sell the [products] for" Sarahi. Dkt. 137 at 30.

Plaintiffs raise a "reverse confusion" theory, arguing that Plaintiffs are in a "calamitous situation competing unfairly for market share and denied the opportunity to expand based on Fashion Nova wrongfully usurping its popular innovative jeans designs and its infringing use of the 'SARAHI' mark and other colorable variations thereof." Dkt. 137 at 30–31. The only evidence cited by Plaintiffs in support of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

their "reverse confusion" theory is a statement that Plaintiffs seek eventually to sell their products in stores. This evidence does not suggest a "strong possibility" that Plaintiffs seek to expand the business to compete with Fashion Nova, which operates in the fast-fashion e-commerce space.

Plaintiffs have not proffered evidence that there was any plan that the "Sarahi" brand would expand beyond brick-and-mortar retailers, or that this occurred. Furthermore, Plaintiffs' reverse confusion theory is premised on the contention that consumers believe that Fashion Nova is the source, or a sponsor of, Sarahi Fashion House. *See Ironhawk Techs.*, 2 F.4th at 1160 ("When assessing reverse confusion on summary judgment, we ask whether a genuine dispute of material fact exists as to the likelihood of confusion."). Plaintiffs have proffered no such evidence. Therefore, Plaintiffs' reverse confusion argument is not persuasive and does not suggest either a strong possibility of expansion or an inability to expand the business due to Defendant's alleged infringement.

Accordingly, the evidence related to expansion is not sufficient to weigh in favor of denying the Motion.

\* \* \*

Based on review of all of the foregoing factors, a triable issue of fact has been presented. Thus, there is evidence that would support a finding that three of the *Sleekcraft* factors weigh in favor of a showing likely customer confusion. Although the convergence of the parties' marketing channels has limited weight, the strength of Plaintiffs' mark and the similarity between the Marks at issue are sufficient to raise such an issue as to likelihood of confusion.

### 3. False Designation of Origin and False Description

The Lanham Act is designed to prevent and address deceptive practices in the marketplace, including conduct that creates a likelihood of confusion between products or services offered by different persons. *See New West Corp. v. N.Y.M. Co. of California*, 595 F.2d 1194, 1201 (9th Cir. 1979); 15 U.S.C. § 1127. "Section 1125(a) creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Intl, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). To prevail on a claim of false association or false designation of origin, a plaintiff must show that:

> (1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin;
> (2) the use was in interstate commerce;
> (3) the use was in connection with goods or services;
> (4) the designation or false designation is likely to cause confusion, mistake, or deception as to
> > (a) the affiliation, connection, or association of defendant with another person, or
> > (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and
> (5) the plaintiff has been or is likely to be damaged by these acts.

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1015 (N.D. Cal. 2015) (citing *Summit Tech., Inc. v. High-Line Med. Instruments*, Co., 933 F. Supp. 918, 928 (C.D. Cal. 1996)); *see also Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007) (citing 15 U.S.C. § 1125);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

*Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1072 n.6 (C.D. Cal. 2004) (citing *Brookfield Comm'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999)).

Under the "false association" prong of section 43 of the Lanham Act, a plaintiff "need only allege commercial injury based upon the deceptive use of a trademark or its equivalent to satisfy standing requirements." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005). The parties do not need to be "competitors 'in the traditional sense.' " *Id.*

Plaintiffs have raised a triable issue of fact as to whether the designation of the SARAHI Mark will cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with another person, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by another person. The analysis with respect to this element is the same as the one addressed above in connection with the parallel *Sleekcraft* factors. Therefore, there is a triable issue of fact as to this claim.

4.  Dilution Claim

To prevail on a dilution claim, a plaintiff must show all of the following: "(1) the mark is famous and distinctive; (2) the defendant is using the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008). There is no requirement to show competition or likelihood of confusion in support of such a claim. *See Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004) (citing 15 U.S.C. § 1127). However, for a plaintiff to establish that the mark is being used in commerce, "the mark used by the alleged diluter must be identical, or nearly identical, to the protected mark." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 905 (9th Cir. 2002) (noting that the Ninth Circuit's description of dilution by blurring and by tarnishment requires defendant to use plaintiff's actual mark) (citation omitted).

To be nearly identical, two marks "must be 'similar enough that a significant segment of the target group of customers sees the two marks as essentially the same.' " *Id.* at 906 (quoting *Playboy Enters. Inc. v. Welles*, 279 F.3d 796, 806 n. 41 (9th Cir. 2002)). To determine the degree of fame a mark possesses, 15 U.S.C. § 1125(c)(2)(A) provides a non-exclusive list of factors that may be considered:

> (i) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties;
> (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark;
> (iii) the extent of actual recognition of the mark; and
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*Jada Toys*, 518 F.3d at 635.

As a threshold matter, Plaintiffs' dilution claim fails because they have not proffered evidence sufficient to show a triable issue as to whether their Mark has the requisite fame. For example, no evidence has been proffered that Plaintiffs' Mark is widely recognized by the public. The only evidence that has been

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

proffered as to whether the Mark has been well publicized relates to a small number of followers on Facebook, Twitter and Instagram. However, no evidence has been proffered that Plaintiffs have made substantial use of these channels during the past few years. Dkt. 143-4 ¶ 91.

Plaintiffs' marketing includes magazines, fashion shows and events with designer brands. *Id.* ¶ 90. No evidence has been presented as to the frequency with which these channels were used or the number of individuals who were reached through these channels. Thus, there is insufficient evidence as to the duration, extent, and reach of the advertising. Further, Plaintiffs' sales data is limited; it includes information on only one fiscal year. *Id.* ¶ 83. Thus, the evidence as to the amount, volume and geographic extent of sales does not support a finding that Plaintiffs' Mark is famous. A claim based on dilution is "reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999). For a mark to be considered famous, it "must be truly prominent and renowned." *Id.* Plaintiffs have not presented sufficient evidence to show that there is a triable issue as to this high bar.

Because the evidence proffered by Plaintiffs is not sufficient to show a triable issue as to dilution, the Motion is **GRANTED** as to this claim.

5.    Unjust Enrichment

Defendant contends that the claim for unjust enrichment is preempted by federal law on patents. Dkt. 128 at 29. Defendant further contends that there is no independent cause of action for unjust enrichment in California under the circumstances presented in this action. *Id.* Plaintiffs respond that Defendant derived a benefit from Plaintiffs' patented designs, which unjustly enriched Defendant when it commercially exploited the Patents. Dkt. 137 at 31.

Plaintiffs' claim for unjust enrichment fails because it is preempted. Preemption in a patent case occurs "whenever the state law provides patent-like protection to subject matter addressed by federal law." *See Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1473 (Fed. Cir. 1998). "Claims that are dependent on a determination of patent inventorship or ownership, such as a misappropriation of patent rights, are generally preempted by federal patent law." *Gerawan Farming, Inc. v. Rehrig P. Co.*, No. 1:11-CV-01273-LJO, 2012 WL 691758, at *7 (E.D. Cal. Mar. 2, 2012). Similarly, "any attempt to obtain a patent-like royalty for the making, using, or selling of a product in the public domain under the rubric of state unjust enrichment law is preempted." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1382 (Fed. Cir. 2005) ("Ultra-Precision seeks a patent-like remedy for Ford's conduct in making, using, and selling products embodying information Ultra-Precision was not successful in protecting under the federal patent laws and which is free for all the world to enjoy.").

Plaintiffs' unjust-enrichment claim is based on the same claimed facts as that support the claim for patent infringement. Indeed, the gravamen of this claim is that Defendant allegedly "benefitted from Plaintiffs providing the . . . [p]atent[ed] designs . . . took the designs, and commercially exploited them" without Plaintiffs' permission. Opposition at 31. Because the basis of the claim is Defendant's alleged use and commercial exploitation of the patented designs, Plaintiffs' claim seeks patent-like protection of those designs. Thus, Plaintiffs contend that Defendant misappropriated Plaintiffs' patented designs. For these reasons, the Motion is **GRANTED** as to the unjust enrichment claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-02360 JAK (RAOx) | Date | |
|---|---|---|---|
| Title | Suzette Kelly et al. v. Fashion Nova, LLC | | |

**V.      Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED**, *i.e.*, with respect to the dilution claim, the unjust enrichment claim, and the trademark and false designation claims to the extent they rely on conduct unrelated to the 15 Accused Trademark Products, and the Motion is **DENIED** with respect to the remaining claims.

**IT IS SO ORDERED.**

_____   :   _____

Initials of Preparer      tj
_____