Justin M. Sobaje (State Bar No. 234165)
email: jsobaje@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, California 90071-2418
Telephone:  213-972-4500
Facsimile:   213-486-0065

Jeanne M. Gills (*pro hac vice*)
email: jmgills@foley.com
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, Illinois 60654-4762
Telephone:  312-832-4500
Facsimile:   312-832-4700

Kelsey C. Boehm (*pro hac vice*)
email: kboehm@foley.com
**FOLEY & LARDNER LLP**
31400 16th Street, Suite 200
Denver, Colorado 80202
Telephone:  720-437-2000
Facsimile:   720-437-2200

Attorneys for **FASHION NOVA, LLC**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION AT LOS ANGELES

| | |
|---|---|
| **SUZETTE A. KELLY**, an individual and **SARAHI FASHION HOUSE, INC.**, a Florida corporation,<br><br>                    Plaintiffs,<br><br>          v.<br><br>**FASHION NOVA, LLC**[1], a California Corporation,<br><br>                    Defendant. | **Case No: 2:23-cv-02360-JAK-RAO**<br><br>**DEFENDANT'S REQUEST FOR REASONABLE FEES AND EXPENSES INCURRED IN MAKING THE MOTION FOR SPOLIATION SANCTIONS**<br><br>**HEARING:**<br>**DATE/TIME: MAY 8, 2024 / 10:00 AM**<br>**COURTROOM: 590**<br><br>**DISCOVERY MATTER: REFERRED TO MAGISTRATE JUDGE ROZELLA A. OLIVER**<br><br>**DISCOVERY CUTOFF DATE: MAR.** |

---

[1] Fashion Nova, Inc. has become Fashion Nova, LLC and, thus, the parties can submit a request to correct the case caption if the case proceeds.

17, 2023

**PRETRIAL CONFERENCE DATE: NOT YET SET**

**TRIAL DATE: NOT YET SET**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 1

II.     STATEMENT OF FACTS ......................................................................... 3

III.    LEGAL STANDARD ............................................................................... 8

IV.     ARGUMENT ............................................................................................ 10

      A.   Defendant's Total Attorney Hours Were Reasonably Necessary ................ 10

      B.   Defendant's Request For Attorneys' Fees Reflects Reasonable Hourly
           Rates For Attorneys In The Los Angeles Community ................................. 12

      C.   Defendant Is Entitled To Recovery Of Expenses Incurred In
           Connection With The Spoliation Motion ................................................... 15

      D.   The Deposition Errata Sheet Issue Was A Very Small Part Of The
           Motion And Only Justifies A Very Small Reduction In The Fees
           Award ....................................................................................................... 15

      E.   Defendants Are Entitled To Recover Fees Incurred In Preparing This
           Fee Request .............................................................................................. 16

      F.   Plaintiffs' Financial Status Does Not Justify A Reduction In Fees
           Because The Fees Were Due To Plaintiffs' Extreme Culpability ............... 17

V.      CONCLUSION ......................................................................................... 18

# Table of Authorities

Page(s)

**Cases**

*Bademyan v. Receivable Mgmt. Servs. Corp.*, Case,
   No. CV 08-519-MMM (RZx), 2009 U.S. Dist. LEXIS 21923 (C.D. Cal. Mar. 9, 2009)
   ..................................................................................................................9

*Bark v. Northrop*,
   300 F.R.D. 486 (D. Or. 2014) ......................................................................16

*Bouman v. Block*,
   940 F.2d 1211 (9th Cir. 1991) ......................................................................9

*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008)..........................................................................8

*Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*,
   No. C 06-03359 JF (RS), 2009 U.S. Dist. LEXIS 107777 (N.D. Cal. Oct. 29, 2009)..16

*Gutierrez v. City of Carson*,
   No. LA CV10-07627 JAK (CWx), 2012 U.S. Dist. LEXIS 199185 (C.D. Cal. Sep. 14,
   2012)......................................................................................................16, 17

*Hensley v. Eckerhart*,
   461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)....................................8

*Inc. v. Rasnick*,
   No. 5:13-cv-02744-BLF, 2015 U.S. Dist. LEXIS 63579 (N.D. Cal. May 13, 2015)....16

*Keithley v. Homestore.com, Inc.*,
   No. C-03-04447 SI (EDL), 2009 U.S. Dist. LEXIS 30187 (N.D. Cal. Mar. 27, 2009) 16

*Laub v. Horbaczewski*,
   No. CV 17-6210-JAK (KS), 2020 U.S. Dist. LEXIS 259004 (C.D. Cal. Nov. 23, 2020)
   ................................................................................................................8, 9

*National Hockey League v. Metropolitan Hockey Club, Inc.*,
   427 U.S. 639, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976) (per curiam ...............9

*Nguyen v. Regents of the Univ. of Cal.*,
   No. 8:17-cv-00423-JVS-KESx, 2018 U.S. Dist. LEXIS 226622 (C.D. Cal. May 18,

ii

2018) ...................................................................................................................... 16

*Perfect 10, Inc. v Giganews, Inc.*,
    No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 53681, 2015 WL 1746484 (C.D.
    Cal. Mar. 24, 2015) ............................................................................................ 14

*Rucker v. Air Ventures, Haw., LLC*,
    2017 U.S. Dist. LEXIS 151498 (D. Haw. Sept. 19, 2017) ................................. 9

*Salazar v. Glenn E. Thomas Co.*,
    No. CV 20-8114 DSF (PVCx), 2021 U.S. Dist. LEXIS 219981 (C.D. Cal. Nov. 5,
    2021) ...................................................................................................................... 14

*Thompson v. Gomez*,
    45 F.3d 1365 (9th Cir. 1995) ............................................................................. 17

*United States v. $12,248 in U.S. Currency*,
    957 F.2d, 1513 (9th Cir. 1991) ............................................................................ 9

*Widrig v. Apfel*,
    140 F.3d 1207 (9th Cir. 1998) ............................................................................. 9

*Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*,
    No. CV 05-1516-RSWL (SHx), 2007 U.S. Dist. LEXIS 72953 (C.D. Cal. Sep. 18,
    2007) ...................................................................................................................... 9

**Rules**

Federal Rule of Civil Procedure 37(e)(2) ................................................... 1, 8, 15

iii

## I.   __INTRODUCTION__

In the November 16, 2023 Order (Dkt. 159) accepting the Report and Recommendation of the United States Magistrate Judge (Dkt. 153, "R&R") on Defendant's Motion (Dkt. 101) for spoliation sanctions, the Court stated that "Fashion Nova's request for monetary sanctions under Federal Rule of Civil Procedure 37(e)(2) for reasonable expenses, including attorneys' fees, is granted, and the matter is referred back to the Magistrate Judge for further proceedings on the determination of the amount of such monetary sanctions." Dkt. 159 at 2. Pursuant to the parties' stipulation emailed to the Court on November 30, 2023, Defendant Fashion Nova, LLC's ("Defendant" or "Fashion Nova") deadline to file the opening brief for the determination of the amount of monetary sanctions was set to be 3 weeks after the Court ruled on Defendant's Summary Judgment Motion. Dkt. 163. The Court issued its Order (Dkt. 171) on Defendant's Summary Judgment Motion (Dkt. 127) on March 8, 2024. Accordingly, Defendant now files this Request for reasonable fees and expenses incurred in making the Motion (Dkt. 101) for spoliation sanctions against Plaintiffs Suzette A. Kelly ("Kelly") and Sarahi Fashion House, Inc. ("Sarahi") (together "Plaintiffs").

Defendant now seeks $75,146.27 in fees and expenses incurred in pursuing the motion for spoliation sanctions, and further seeks its fees involved in this fee request. The fees and expenses were reasonably necessary to achieve the result obtained, and were due to Plaintiffs' culpable conduct. After Plaintiffs identified a YouTube video from a channel they controlled, Defendant identified 5 different YouTube videos from that same channel that supported patent invalidity. After Defendant's identification, Kelly deleted the videos, with Videos 2 through 5 being irretrievably lost. After Kelly deleted Videos 2-5, both Kelly (via sworn deposition testimony) and her counsel (via subsequent communications) not only denied deleting the videos, but also questioned whether the videos displayed Plaintiffs' jeans or were ever on Plaintiffs' YouTube channel. Kelly maintained those positions despite Defendant's counsel explaining that they viewed the videos, that they showed Plaintiffs' jeans, and that they were on Plaintiffs' YouTube channel. Kelly's denials caused Defendant's counsel to expend more time and resources gathering further evidence and briefing these issues because Kelly would not be

forthright.

All of the fees being sought in this motion could have been avoided if Kelly had not intentionally deleted the YouTube videos or if she had been truthful regarding her deletion, their existence, and their content during her deposition. Moreover, Defendant is only seeking its fees in connection with the motion for spoliation, and has not included its fees for the four months prior, during which Defendant's counsel tracked down evidence of the deletion of the videos, corresponded with opposing counsel regarding the videos, and took Kelly's deposition in which she was dishonest about what happened to the videos.

Defendant's counsel followed the discovery dispute process of L.R. 37-1 and 37-2 to first draft a letter to try to resolve the issues, and when Kelly continued to deny the deletions, to draft Defendant's portion of the joint stipulation for the spoliation sanctions motion. After Defendant's counsel already sent its portion of the L.R. 37-2 joint stipulation to Plaintiff's counsel, Kelly supplied a declaration finally admitting that she deleted Videos 2 and 3, but saying that it was "accidental" and still calling into question their content, and still denying that she deleted Videos 4 and 5 or that those videos were ever on Plaintiffs' YouTube channel. Kelly's refusal to come clean led Defendant's counsel to file a L.R. 37-2.3 supplemental memorandum, as well as to prepare slides for the L.R. 37-3 hearing, to demonstrate that the videos were indeed on Plaintiffs' YouTube channel and that it is practically impossible to delete a video on YouTube by accident. All of the time spent proving these issues was entirely due to Kelly not being forthright. Each of the steps in the process was controlled by the Local Rules, so Defendant's counsel had to go through each step and did so as efficiently as possible given Kelly's obstructions.

The Court agreed with Defendant and concluded that "by a preponderance of the evidence, Plaintiffs acted with the intent to deprive Fashion Nova of the use of the four lost videos." R&R at 12. The Court found that "the videos were affirmatively deleted" by Kelly after they were identified as evidence by Defendant. *Id*. at 17. The Court indicated that the adverse inference from the deletion of the videos would be permissive rather than mandatory, largely because the Court felt (and Plaintiffs agreed) that "Fashion Nova has other evidence of prior

sales" and that "Fashion Nova has pointed to substantial evidence in other forms to support its motion for summary judgment." *Id*. at 15. However, in the Court's subsequent summary judgment order, the court indicated that Defendant's other photo evidence was "not clear" and that the "disclosed images are taken from different angles than those reflected in the design patents and certain of the images are blurred or have shadows and similar effects." Dkt. 171 at 20. This makes the four deleted videos of even greater importance because, as explained by Defendant's counsel, the deleted videos showed the jeans from numerous angles and on numerous women, so they could have been used as proof to show all angles of the jeans being offered for sale prior to the critical date.

Moreover, after the R&R on spoliation issued and after the summary judgment hearing, Kelly finally produced a copy of her book, which she failed to produce during the discovery period. The book included a journal entry in which Kelly pointed to the YouTube link for Video 4 and explained that the video displayed the jeans that she was selling. Dkt. 175-2 ("Kelly Book") at p. 67. Thus, all of Kelly's protestations regarding the existence of Video 4 on Plaintiffs' YouTube channel and the content of the video as showing Plaintiffs' jeans were directly contradicted by Kelly's real-time statements in her own book. Kelly's failure to produce the book during discovery led to Defendant's motion for partial reconsideration of the summary judgment order. Dkt. 174, 175.

Defense counsel's efforts required approximately 99 hours of attorney work—a reasonable amount given the quantity of briefing involved—and further required the time expended on this request for fees. The fees reflect reasonable market-tested rates and align with rates previously endorsed by this Court for the Los Angeles community. Given Plaintiffs' extreme culpability necessitating this process and their utter lack of candor, Defendant requests that the Court award it the entirety of its requested fees and expenses.

## II.   STATEMENT OF FACTS

"Fashion Nova placed Plaintiffs on notice on January 12, 2023 and January 17, 2023 that Fashion Nova intended to rely on Videos 1 through 5 as extrinsic evidence." R&R at 8. "Once Fashion Nova made this representation, Plaintiffs had a duty to preserve this evidence to the

-3-

extent Plaintiffs had access to, or indirect control over, such evidence." *Id*. Mr. Sobaje, counsel for Defendant, viewed all five of those YouTube videos on January 12, 2023 on Plaintiffs' YouTube channel. Dkt. 101-2, ¶30. Those videos showed women wearing jeans that were identified as Sarahi's jeans apparently offered for sale and showed the jeans from numerous angles and on numerous women. *Id*., ¶31.

"On March 10, 2023, counsel for Fashion Nova emailed Plaintiffs' counsel, stating that Fashion Nova noticed that the five YouTube videos identified in the January 12, 2023 email and the January 17, 2023 evidence disclosure had been 'removed by the uploader.'" R&R at 5. "On March 27, 2023, Plaintiffs' counsel responded that it was still being ascertained whether all the videos were owned and/or uploaded by Plaintiffs" and counsel further stated that Video 1 had been restored. *Id*.

"Counsel for Fashion Nova sent Plaintiffs' counsel a letter on May 15, 2023" and "[a]mong other things, the letter requested information as to who was responsible for deleting the YouTube videos." *Id*. at 5-6. In Plaintiffs' counsel's May 23, 2023 reply letter, she stated that "[p]ursuant to Ms. Kelly's deposition testimony, she was not in control of all videos uploaded to social media websites, nor the removal of the same" citing to her deposition transcript at 53:20-55:24, and that "Ms. Kelly has already restored the sole video for which she had access and control that was removed" and that "Plaintiff has insufficient access, control, knowledge, or information as to the remaining videos that were allegedly removed, and/or who removed the same" and that "[a]ny persons identified regarding content that is not fully ascertainable would be based on pure speculation." Dkt. 101-24 at 4.

On August 15, 2023, Defendant's counsel served Plaintiffs' counsel with a single-spaced 7-page letter pursuant to L.R. 37-1. Declaration of Jeanne M. Gills ("Gills Decl."), ¶¶ 2-3, Ex. 1, 2. Only approximately one-half page of that letter concerned Kelly's deposition errata sheet (Gills Decl., Ex. 2 at 6), while the remainder focused on spoliation due to Kelly's deletion of the YouTube videos. *Id*., Ex. 2. The letter pointed out that Plaintiffs must have the credentials to Plaintiffs' YouTube channel because they were able to reupload Video 1 on March 27, 2023. *Id*., Ex. 2 at 1. The letter also pointed out that the Internet Archive captured copies of the pages

-4-

(but not the videos) of two of the deleted YouTube videos in February 2023, thus demonstrating their existence on Plaintiffs' YouTube channel in February 2023. *Id*. The parties then met and conferred, and Plaintiffs maintained their earlier stated positions even in view of the evidence cited by Defendant.

On August 23, 2023, Defendant's counsel served Plaintiffs' counsel with a 21-page document pursuant to L.R. 37-2.2 including Defendant's portion of the Joint Stipulation for the discovery dispute. Gills Decl., ¶¶ 4-5, Ex. 3, 4. Only approximately 3 pages were devoted to the issue with Kelly's deposition errata sheet, with one-and-a-half pages of those 3 pages being a table of changed testimony. *Id*., Ex. 4 at 17-20. The remainder of the document was devoted to the spoliation based on the deletion of the YouTube videos. After Defendant served its portion of the Joint Stipulation, Plaintiffs' counsel provided a declaration from Kelly dated August 30, 2023. Dkt. 101-39. In that declaration, Kelly ***admitted for the first time*** to deleting Videos 2 and 3, but claimed they were "accidentally removed." *Id*., ¶¶ 7, 9. Kelly still falsely claimed that: Videos 4 and 5 never existed on Plaintiffs' YouTube channel; she lacked knowledge of the contents of those videos; and she had no recollection of deleting those videos. *Id*., ¶¶ 12-14. The Joint Stipulation for the discovery dispute was filed on August 31, 2023, which was the deadline for filing. Dkt. 101-1. Defendant included a declaration and 28 exhibits with the Joint Stipulation, with the vast majority of the exhibits relating to the spoliation of the YouTube video evidence. Dkt. 101-2 – 101-30.

In view of new statements in Kelly's August 30, 2023 declaration, Defendant's counsel prepared and filed a 5-page supplemental memorandum on October 11, 2023 (pursuant to L.R. 37-2.3) devoted entirely to the spoliation of the YouTube video evidence, and directed to proof of the existence of the deleted videos on Plaintiffs' YouTube channel. Dkt. 131. Defendant's counsel further created a PowerPoint slide deck with 11 slides for the hearing on that motion, with slides demonstrating that it is practically impossible to "accidentally" delete a YouTube video, but rather deletion is intentional where it requires multiple mouse clicks with YouTube seeking confirmation of each step. Gills Decl., ¶ 6, Ex. 5. Defendant's counsel prepared for and participated in the hearing on October 25, 2023, pursuant to L.R. 37-3, with the vast majority of

the hearing devoted to the issue of the deleted YouTube videos.

The Court issued the R&R on October 30, 2023. Dkt. 153. The Court noted that "[a]s to Videos 4 and 5, Plaintiffs dispute their existence on the Sarahi Jeans YouTube Channel" and stated that "[i]f these videos never existed on the Sarahi Jeans YouTube channel, Plaintiffs do not provide a satisfactory explanation why counsel for Fashion Nova included the titles and hyperlinks for these videos in its January 12, 2023 email, why the Internet Archive shows—as of early February 2023—that these videos had been uploaded by the Sarahi Jeans YouTube channel, or why the Sarahi Facebook page posted a link to Video 4 in July 2011." R&R at 8.

Regarding the deleted YouTube videos, the Court found that "there is sufficient circumstantial evidence from which to infer intent" for spoliation because "[a]fter being available for at least 11 years as of January 2023, the videos were deleted within two months of Fashion Nova informing Plaintiffs of Fashion Nova's intent to rely on these specific videos as extrinsic evidence" and "[t]he timing of the destruction is consistent with an intent to deprive." *Id*. at 11. The Court further stated that "the preponderance of the evidence shows that all the lost videos were deleted by Kelly." *Id*. The Court observed that "[o]ther than stating that it was accidental, Kelly provides no reason as to why she deleted only videos identified by Fashion Nova." *Id*. at 12. The Court concluded that "by a preponderance of the evidence, Plaintiffs acted with the intent to deprive Fashion Nova of the use of the four lost videos." *Id*.

The Court recognized that Defendant "could have used the contents of the video to determine whether they were shot in public prior to the critical date" and that "the videos may have been relevant in determining whether jeans on sale around the time of the videos reflected the patented designs" and stated that "[t]he Court agrees that Fashion Nova is prejudiced in not being able to rely on these videos in the described manner to support its case." *Id*. at 14. The Court further recognized that "the videos may have shown the patented designs in use and from different angles." *Id*. at 15. The Court indicated that an adverse inference was appropriate, but made the inference permissive rather than mandatory for at least the reasons that it indicated that "the lost videos are far from the only evidence Fashion Nova has to show an on-sale bar" and that "[a]s Plaintiffs' counsel pointed out, Fashion Nova has pointed to substantial evidence in

-6-

other forms to support its motion for summary judgment." R&R at 15.

In finding that there was a triable issue as to patent invalidity, the Court's summary judgment order stated that the images provided by Defendant are "not clear" and that the images "are taken from different angles than those reflected in the design patents and certain of the images are blurred or have shadows and similar effects." Dkt. 171 at 20. Defendant has now sought partial reconsideration of that order to either find the patents invalid or to have the adverse inference be mandatory because the deleted videos showed the jeans from various angles and, thus, would have supplied the evidence that the Court felt was missing in the other images. Dkt. 175.

Moreover, during discovery, counsel for Fashion Nova asked for, and Plaintiffs failed to produce, a copy of Kelly's book titled "A Journal To My Success Chapter One," which was written by Kelly and published in 2013. Dkt. 101-2 ¶¶ 22-23; Dkt. 101-23 at 4; Dkt. 101-24 at 4; Dkt. 175-3 at 185:16-186:16. The Kelly Book included details of the years 2010-2013, giving dates, times and notes of the time span during which the prior art publications and offers for sale were made. Throughout discovery, Kelly repeatedly claimed that she lacked any copies of her own book and failed to produce it. Dkt. 101-2 ¶¶ 22-23; Dkt. 101-23 at 4; Dkt. 101-24 at 4; Dkt. 175-3 at 185:16-186:16. Kelly only produced this book *after* the R&R was issued and after the summary judgment hearing.

In that book, Kelly claims that in January 2011, she was given a vision telling her to patent the Sarahi Signature V and C cut jeans and she believed that the patent process had begun. Dkt. 175-2 at 53. Kelly then consulted with Carol Green (Plaintiffs' counsel of record) for the patenting process. *Id.* On March 11, 2011, Kelly wrote "[y]es we own the patent," thus indicating her mistaken belief that the patent process for the jean designs had started. *Id.* at 57. However, Ms. Green had not filed any patent applications at that time (2011), but rather filed them over a year later, on June 19, 2012. Dkt. 119-1, 119-2.

On June 3, 2011, Kelly noted she "was getting ready to reveal them to the public for the first time" and "had started the patent process, so it was ok to give a glimpse into what was to come, and [] needed to see how the public would respond to these new jeans." Dkt. 175-2 at 63-

64. This journal entry is consistent with the June 13, 2011 Bronze Magazine publication, which was more than one year prior to the filing of the patent applications, thus indicating she believed the published pictures were what was being patented. Dkt. 143-4 ¶¶ 52-53. Likewise, her journal entries are consistent with her reference in that article to the jeans as the "patented" jeans. *Id*. ¶ 56.

On July 11, 2011, Kelly wrote in her journal pointing to the link to the Bronze Magazine article as well as a video on YouTube with the YouTube video link of http://www.youtube.com/watch?v=NxZpAtfkITw&feature=youtube_gdata_player. Dkt. 175-2 at 67. That YouTube video was one of the YouTube videos that Kelly deleted after it was identified as invalidity evidence in this case, and is known as "Video 4." Dkt. 153 at 4. The Kelly Book demonstrates that Video 4 did display the jeans that were being offered for sale. Dkt. 175-2 at 67.

## III.    **LEGAL STANDARD**

This Court ruled that "Fashion Nova's request for monetary sanctions under Federal Rule of Civil Procedure 37(e)(2) for reasonable expenses, including attorneys' fees, is granted, and the matter is referred back to the Magistrate Judge for further proceedings on the determination of the amount of such monetary sanctions." Dkt. 159 at 2. "In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), the Supreme Court adopted the lodestar method for calculating attorneys' fee award." *Laub v. Horbaczewski*, No. CV 17-6210-JAK (KS), 2020 U.S. Dist. LEXIS 259004, at *13 (C.D. Cal. Nov. 23, 2020). "A court determines the lodestar by multiplying the number of hours reasonably expended on a particular motion by a reasonable hourly rate." *Id*.

"To determine the reasonable hourly rate of an attorney, courts must look to the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" *Id*. (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)). "When applying the lodestar method to determine a reasonable hourly rate, 'the relevant community is the forum in which the district court sits.'" *Id*. at *15 (quoting Camacho, 523 F.3d at 979). Thus, "[f]or purposes of the lodestar analysis in this case, the Court

-8-

must consider prevailing hourly rates in the Los Angeles community." *Id*.

"A declaration regarding the prevailing rate in the relevant community is sufficient to establish a reasonable hourly rate." *Id*. at *14 (citing *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998)). "Evidence of prevailing rates in the community are sufficient to establish the appropriate rate of lodestar purposes." Id. at *15 (citing *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991)). "'When a fee applicant fails to meet its burden of establishing the reasonableness of the requested rates, however, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community.'" *Id*. at *14 (quoting *Bademyan v. Receivable Mgmt. Servs. Corp.*, Case No. CV 08-519-MMM (RZx), 2009 U.S. Dist. LEXIS 21923, 2009 WL 605789 at *5 (C.D. Cal. Mar. 9, 2009)).

"In addition, a party seeking attorneys' fees following a successful discovery motion 'bears the burden of proving that the fees and costs taxed are … reasonably necessary to achieve the result obtained.'" *Id*. (quoting *Rucker v. Air Ventures, Haw., LLC*, 2017 U.S. Dist. LEXIS 151498, 2017 WL 4158201, at *3 (D. Haw. Sept. 19, 2017)). "Courts have a 'strong preference' for contemporaneous time records, but reconstructed time records are not per se impermissible and do not preclude an award of attorneys' fees." *Id*. at *15 (citing *United States v. $12,248 in U.S. Currency*, 957 F.2d, 1513, 1521 (9th Cir. 1991)).

"The Court must also consider [a] request for fees incurred in preparing the Fee Request itself" because "the fees incurred in preparing the fee application are recoverable." *Id*. at *33-34.

Rule 37 sanctions "must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, No. CV 05-1516-RSWL (SHx), 2007 U.S. Dist. LEXIS 72953, at *54 (C.D. Cal. Sep. 18, 2007) (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976) (per curiam)).

## IV.    ARGUMENT

### A.    Defendant's Total Attorney Hours Were Reasonably Necessary

Three attorneys—Jeanne M. Gills, Kelsey C. Boehm, and Justin M. Sobaje—were responsible for the Motion, and are the three attorneys handling the case for Defendant. Their tasks included: (1) conducting research, gathering evidence, and drafting the L.R. 37-1 letter to Plaintiffs regarding the spoliation issue, and participating in a meet and confer regarding the spoliation issue; (2) drafting the motion for sanctions as well as Defendant's portion of the L.R. 37-2 Joint Stipulation for the motion and an accompanying declaration, and gathering the 28 exhibits cited by Defendant in the Joint Stipulation; (3) drafting the L.R. 37-2.3 supplemental memorandum to address statements made by Kelly in her declaration submitted by Plaintiffs with the Joint Stipulation; (4) preparing for and actively participating in the oral argument, including the preparation of the slide deck; and (5) post-hearing tasks.

The table below summarizes the number of hours that each attorney spent on the above identified tasks.

| Attorney | L.R. 37-1 Letter | L.R. 37-2 Joint Stipulation | L.R. 37-2.3 Supplemental Memorandum | Oral Argument | Post-Hearing Tasks | Total |
|---|---|---|---|---|---|---|
| Jeanne M. Gills | 1.0 | 7.7 | 5.5 | 14.6 | 3.1 | **31.9** |
| Kelsey C. Boehm | 0 | 0 | 0 | 2.4 | 0 | **2.4** |
| Justin M. Sobaje | 20.4 | 24.9 | 12.9 | 6.5 | 0 | **64.7** |
| **Total** | **21.4** | **32.6** | **18.4** | **23.5** | **3.1** | **99** |

The specific time entries from July to November 2023, which sum up to the total hours identified in the above table are attached to the Gills Declaration as Exhibit 7. The original time entries as billed to the client are attached to the Gills Declaration as Exhibit 6, and the time

-10-

entries in Exhibit 7 have been reduced down to account for instances in which there was billing for other tasks in any particular time entry, so as to reflect only the time spent on the motion. Moreover, the time entries in Exhibit 6 included entries for a paralegal, but those entries have been removed in Exhibit 7, so there is additional paralegal time that Defendants are not seeking in this request, thereby supporting its reasonableness.

In an attempt to eliminate as many disputes as possible, and following the procedure set out in L.R. 37-1, Defendant's counsel prepared the single spaced 7-page letter identifying each issue in dispute, stating Defendant's position and providing legal authority that Defendant believed was dispositive of each dispute, and specifying the terms of the discovery order to be sought. Gills Decl., ¶ 3, Ex. 2. After receiving the letter, Plaintiffs continued to question the contents of the deleted Videos 2-5, continued to question whether the videos were ever located on Plaintiffs' YouTube channel, and continued to claim that Kelly did not delete those videos. Defendant, therefore, proceeded to the step of L.R. 37-2 to prepare the moving papers, including the joint stipulation and accompanying declaration and exhibits. As Kelly at that time was still denying deleting any of Videos 2-5, and was still denying their existence on Plaintiffs' YouTube channel, Defendant's counsel prepared a 21-page brief for Defendant's portion of the Joint Stipulation (Dkt. 101-1). Gills Decl., ¶ 5, Ex. 4.

Only after Defendant sent its section of the Joint Stipulation to Plaintiffs did Kelly provide a declaration admitting to having deleted Videos 2 and 3 (Dkt. 101-39, ¶ 9), but still denying the existence and content of Videos 4 and 5 and denying having deleted those videos (Dkt. 101-39, ¶¶ 12-14). Defendant, therefore, proceeded to L.R. 37-2.3 to draft and file the 5-page Supplemental Memorandum to point out Kelly's belated admission regarding deleting the 2nd and 3rd videos as well as to point out the overwhelming evidence of the existence of the 4th and 5th videos on Plaintiffs' YouTube channel. Dkt. 131.

Even after Defendant provided evidence from the Internet Archive showing that the deleted videos had been on Plaintiffs' YouTube channel for over a decade and that Kelly had selectively deleted only the videos identified as evidence by Defendant, Plaintiffs continued to the Oral Argument on the Motion still claiming there was no evidence of the existence of videos

-11-

4 and 5 and that Kelly had "accidentally" removed videos 2 and 3. Defendant's counsel, therefore, prepared a PowerPoint slide deck with 11 slides, including slides showing that it would be practically impossible to "accidentally" remove a video from YouTube and demonstrating that the videos were on Plaintiffs' YouTube channel, and attended the Oral Argument to further explain these points to the Court. Gills Decl., ¶ 6, Ex. 5. The Magistrate Judge then issued the R&R concluding that "by a preponderance of the evidence, Plaintiffs acted with the intent to deprive Fashion Nova of the use of the four lost videos." R&R at 12.

The total of 99 hours for all of those tasks is appropriate considering the substantial resources invested by Defendant in securing the spoliation sanctions against Plaintiffs, and in view of the extreme culpability of Kelly in deleting the evidence after it was specifically identified by Defendant, as well as in view of the significant importance of the deleted evidence to the present case—an importance that has been further highlighted by the Court's Summary Judgment Order and by the excerpts from Kelly's book that was belatedly produced. Due to Kelly not being forthright regarding the presence of the deleted videos on Plaintiffs' YouTube channel, the content of the deleted videos, as well as her role in deleting the videos, Defendant's legal counsel was forced to extensively research and gather evidence to prove the spoliation issues arising from Kelly's actions, including gathering 28 exhibits filed with the motion. If Kelly had simply admitted that the videos were on Plaintiffs' YouTube channel, that they showed Plaintiffs' jeans, and that she deleted them, then the motion could have been very simple to prepare. However, by not being forthright, Kelly forced Defendant's counsel to have to prove and brief every one of those issues, which ran up Defendant's attorneys' fees due to Kelly's extremely culpable behavior.

### B.  Defendant's Request For Attorneys' Fees Reflects Reasonable Hourly Rates For Attorneys In The Los Angeles Community

Defendant's three attorneys are from the law firm of Foley & Lardner LLP, which is a law firm of over 1,000 attorneys, with a long track record in handling intellectual property cases. Gills Decl., ¶ 11. Ms. Gills is a senior partner at Foley & Lardner in the Chicago office, is vice chair of the Intellectual Property Department, and bills Defendant at an hourly rate of $1,175.

-12-

*Id.*, ¶ 12. Ms. Boehm is senior counsel at Foley & Lardner in the Denver office, and bills Defendant at an hourly rate of $655. *Id.*, ¶ 13. Mr. Sobaje is special counsel at Foley & Lardner in the Los Angeles office, and bills Defendant at an hourly rate of $600. *Id.*, ¶ 14.

Each attorney's hourly rate is appropriate for the Los Angeles community in light of their skill level and experience:

- Ms. Gills has been named to the Forbes list of "America's Top 200 Lawyers" for the year 2024. *Id.*, ¶ 15. She is a graduate of The University of Chicago Law School (J.D., 1994), and has worked at Foley & Lardner since 1996. *Id.* She acts as lead trial counsel in complex patent, trade secret, trademark, copyright, and unfair competition litigation and appeals—including USPTO post-grant proceedings—in diverse industries ranging from electronics to fashion to biotechnology. *Id.* She has handled over 100 patent cases, including design patent cases. *Id.* She is a member of the firm's Compensation Committee and also a former member of the firm's Management Committee. *Id.*

- Ms. Boehm is a graduate of The University of Wisconsin Law School (J.D., cum laude, 2016) and has worked at Foley & Lardner since 2016. *Id.*, ¶ 16. She handles a wide array of complex commercial litigation matters including class action defense, contract disputes, and intellectual property matters, and has substantial experience advising clients in the food and beverage, fashion and beauty, health care, and automotive industries. *Id.* She has been recognized by "Best Lawyers: Ones to Watch" for Commercial Litigation (2024). *Id.*

- Mr. Sobaje is a graduate of UCLA School of Law (J.D., 2004), and has worked as an intellectual property attorney in Foley's Los Angeles office since 2004. *Id.*, ¶ 17. He is a seasoned patent litigator with experience litigating in the most popular district court patent venues as well as before the International Trade Commission, and has been counsel on over 50 patent cases, including design patent cases. *Id.*

Based on her experience with what Foley & Lardner charges clients for work performed

in Los Angeles, Ms. Gills declares that the rates charged to Defendant in this case are in line with rates charged to other similarly situated clients in Los Angeles for similar matters. *Id.*, ¶ 18. Ms. Gills also declares that these rates are in line with those charged for attorneys of similar experience by comparable law firms in Los Angeles. *Id*. This is confirmed by the ELM Solutions Real Rate Report from 2022. *Id.*, ¶ 9, Ex. 8. Courts in the Central District of California regularly accept the Real Rate Report as an "appropriate barometer of the reasonable rates in the Central District" because it is based on actual legal billing. *Salazar v. Glenn E. Thomas Co.*, No. CV 20-8114 DSF (PVCx), 2021 U.S. Dist. LEXIS 219981, at *27 (C.D. Cal. Nov. 5, 2021). The Real Rate Report shows the third quartile hourly rates for partners in Los Angeles as $1,045, and shows a median hourly rate for associates in Los Angeles as $615. Gills Decl., ¶ 9, Ex. 8 at 16. The Real Rate Report also shows the Real Rate for Intellectual Property attorneys in a firm of more than 1,000 lawyers in Los Angeles to have a median of $1,046 for partners and a median of $765 for associates. *Id.*, Ex. 8 at 178. The Real Rate Report further shows the third quartile rate for a partner in the practice area of "Intellectual Property: Patents" in Los Angeles to be $1,100, and the median for an associate in that practice area to be $765. *Id*. at 154. Ms. Gills has been recognized by Forbes as one of "America's Top 200 Lawyers," so her experience is comparable to the third quartile in the statistics. Ms. Boehm and Mr. Sobaje have much more experience than associates, and yet have comparable rates to the associates in the Real Rate Report for Los Angeles.

The rates are also in line with those that courts have permitted parties to recover in connection with prior lawsuits of similar complexity (after adjusting for inflation). *See Laub*, 2020 U.S. Dist. LEXIS 259004, at *20 (billing rates of $872 for partner; $715.55 for counsel; and $591.60 for a fifth-year associate reasonable for Los Angeles market); *Perfect 10, Inc. v Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 53681, 2015 WL 1746484, at *15-16 (C.D. Cal. Mar. 24, 2015) (billing rates of $750-$930 for a senior partner; $610 -$750 for junior partner; and $350-690 for associates reasonable in L.A. market).

Applying the lodestar approach, these reasonable hourly rates multiplied by the reasonable number of hours expended by Defendant on the Motion result in attorneys' fees of

-14-

$77,874.50 as shown in the table below.

| Attorney | Number of Hours | Rate | Total Fees |
|---|---|---|---|
| Jeanne M. Gills | 31.9 | $1,175 | $37,482.50 |
| Kelsey C. Boehm | 2.4 | $655 | $1,572 |
| Justin M. Sobaje | 64.7 | $600 | $38,820 |
| **TOTAL** | **99** | **N/A** | **$77,874.50** |

### C.   Defendant Is Entitled To Recovery Of Expenses Incurred In Connection With The Spoliation Motion

This Court ruled that "Fashion Nova's request for monetary sanctions under Federal Rule of Civil Procedure 37(e)(2) for reasonable *expenses*, including attorneys' fees, is granted, and the matter is referred back to the Magistrate Judge for further proceedings on the determination of the amount of such monetary sanctions." Dkt. 159 at 2 (emphasis added). The court, therefore, expressly included expenses in the calculation of sanctions. Defendant's expenses in connection with the spoliation motion are listed at the end of Exhibit 7 to the Gills Declaration and are for hotels, meals, internet connections, airfares, and car services for Ms. Gills to attend the hearing on the motion. The total expenses are $1,226.84.

This case was originally filed in Florida in September 2021, and was transferred to California on April 5, 2023 (Dkt. 68), so it is unsurprising that counsel would have to travel to attend court hearings.

### D.   The Deposition Errata Sheet Issue Was A Very Small Part Of The Motion And Only Justifies A Very Small Reduction In The Fees Award

A very small part of the motion was a motion to strike Kelly's deposition testimony in her errata sheet. Dkt. 101-1 at 27-30. This part of the motion included just one page explaining the case law, a simple table showing the changes in the testimony as reflected in the errata sheet, and a paragraph of explanation. *Id*. This part of the motion did not entail additional gathering of

-15-

exhibits for proof and the research for the case law was very straightforward. *Id*. In the initial L.R. 37-1 letter, this issue was relegated to just a half page of the 7-page letter. Gills Decl., Ex. 2. Additionally, the oral hearing focused largely on the spoliation motion and very little on the deposition errata sheet issue.

The total attorney fees for the motion were $77,874.50 and the total expenses were $1,226.84, for a total of $79,101.34. Reducing that amount by 5% to account for the errata sheet issue is $79,101.34 - $3,955.07, for a total of $75,146.27.

Courts in this circuit have upheld fee awards in comparable cases that were much greater than the amount requested by Defendant. *See Keithley v. Homestore.com, Inc.*, No. C-03-04447 SI (EDL), 2009 U.S. Dist. LEXIS 30187, at *3 (N.D. Cal. Mar. 27, 2009) ("the Court awarded $148,269.50 in sanctions to Plaintiffs for the fees and costs incurred in bringing the motion for sanctions regarding spoliation"); *Clear-View Techs., Inc. v. Rasnick*, No. 5:13-cv-02744-BLF, 2015 U.S. Dist. LEXIS 63579, at *26 (N.D. Cal. May 13, 2015) (awarding $212,320 in attorneys' fees as spoliation sanctions); *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, No. C 06-03359 JF (RS), 2009 U.S. Dist. LEXIS 107777, at *10-12 (N.D. Cal. Oct. 29, 2009) (awarding over $257,000 in attorneys' fees and costs as spoliation sanction), *aff'd* 2010 U.S. Dist. LEXIS 49509, at *26 (N.D. Cal. Apr. 23, 2010).

**E.    Defendants Are Entitled To Recover Fees Incurred In Preparing This Fee Request**

As Courts in the Central District of California have recognized, parties entitled to attorneys' fees may also recover fees for preparing and arguing the fee request. *See Nguyen v. Regents of the Univ. of Cal.*, No. 8:17-cv-00423-JVS-KESx, 2018 U.S. Dist. LEXIS 226622, at *12 (C.D. Cal. May 18, 2018) ("'A party entitled to attorney fees may also recover additional amounts, or 'fees on fees,' necessarily incurred in obtaining an award.' (quoting *Bark v. Northrop*, 300 F.R.D. 486, 495 (D. Or. 2014)); *Gutierrez v. City of Carson*, No. LA CV10-07627 JAK (CWx), 2012 U.S. Dist. LEXIS 199185, at *6 (C.D. Cal. Sep. 14, 2012) (Kronstadt, J.) ("'[r]ecoverable attorney's fees may include fees incurred while doing work on the underlying merits of the action ('merits fees') as well as fees incurred while pursuing merits fees

-16-

('fees-on-fees').'" (quoting *Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995)).

Exhibit 9 to the Gills Declaration reflects the number of hours that Defendant's counsel reasonably expended in preparing this request for fees, which includes the time spent on researching and drafting the request and compiling the relevant billing records. In addition to the 26.1 hours of time reflected in those billing records, Defendants will also supplement this request with any additional records related to time spent on preparing their reply brief and, if necessary, preparing for oral argument.

**F.**     **Plaintiffs' Financial Status Does Not Justify A Reduction In Fees Because The Fees Were Due To Plaintiffs' Extreme Culpability**

The Report and Recommendation notes that "Plaintiffs raised a 'David v. Goliath' argument regarding any fee award." R&R at 17. Plaintiffs' financial status, however, does not justify a reduction in fees because the fees were due to Plaintiffs' extreme culpability in intentionally deleting the identified video evidence, and then not being forthright about its destruction, where it was posted, or its contents. Dkt. 101-2, ¶¶ 30, 31; R&R at 11-15. There has also been extreme prejudice to Defendant, because Defendant's summary judgment motion for patent invalidity was denied due to lack of clear photos from all angles of the jeans being offered for sale, which would have been visible in the deleted videos as indicated by Kelly's belatedly produced book that referred to Video 4 as showing the jeans being offered for sale. Dkt. 171 at 20; Dkt. 175-2 at 53, 57, 63-64, 67.

In *Laub*, the Court considered a case in which a Plaintiff was "near indigence" but in which the Plaintiff's conduct was "negligent at worst, but not willful" in the spoliation of evidence and in which the spoliation led to "limited prejudice" and reduced the fee award down by 55% for a total award of $33,562.36. *Laub*, 2020 U.S. Dist. LEXIS 259004, at *31, 40. The Court there stated that "[n]egligence is a far cry from willful conduct and, to the extent the Court considers the degree of culpability in its analysis, Plaintiff's negligence militates against a sanction that is disproportionate to the degree of culpability the Court found." *Id*. at *39. Unlike *Laub*, Kelly committed willful conduct through her intentional deletion of the videos and then subsequent cover-up. R&R at 11-15. Thus, the outcome in *Laub* is a "far cry" from what should

-17-

happen in the present case. As indicated above, if Kelly had simply been forthright from the beginning about intentionally deleting the videos, where they were located, and their contents, most of the briefing could have been avoided. Thus, Kelly should not be able to appeal to "justice" to try to reduce the fee award since her own intentional conduct led to the results.

Moreover, unlike *Laub* where there was "limited prejudice" due to the spoliation, in the present case there has been extreme prejudice because Defendant has been deprived of the videos that would have shown the jeans from multiple angles, and Defendant's summary judgment motion of invalidity was denied due to not having photos of enough angles of the jeans. Therefore, there should be no reduction of fees in the present case.

## V.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its request for $75,146.27 in attorneys' fees and expenses for the spoliation motion, and further grant its request for its fees and expenses in pursuing this fee request.


Dated: March 29, 2024              /s/ *Jeanne M. Gills*
                                   Jeanne M. Gills
                                   Justin M. Sobaje
                                   Kelsey C. Boehm

                                   **FOLEY & LARDNER LLP**

                                   **Attorneys of Record for Defendant
                                   Fashion Nova, LLC**

-18-

## <u>Certification Pursuant to Local Rule 11-6.2</u>

The undersigned, counsel of record for Defendant Fashion Nova, LLC, certifies that this brief contains 6,636 words, which complies with the word limit of L.R. 11-6.1.

DATED: March 29, 2024

<u>*/s/ Jeanne M. Gills*</u>
Jeanne M. Gills

-19-